THE STATE OF OHIO, APPELLEE, *v.* DEAN, APPELLANT.

[Cite as *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070.]

*Criminal law — Aggravated murder — Sixth Amendment violation — Death penalty conviction and sentence vacated, and cause remanded.*

(No. 2006-1126 — Submitted August 10, 2010 — Decided October 26, 2010.)

APPEAL from the Court of Common Pleas of Clark County,

No. 05-CR-348.

_____

LUNDBERG STRATTON, J.

{¶ 1} This case involves a defendant's Sixth Amendment request to represent himself, which was denied by the trial judge because the request was viewed as involuntary. Yet the trial judge's bias against and threats to defense counsel created the involuntary nature of defendant's choice. Counsel stated that they could no longer fully represent their client because the judge had made statements against them. This unusual conundrum had caused counsel to be apprehensive, anxious, and preoccupied over the judge's intentions. However, the judge refused to allow them to withdraw from the case. The defendant, seeing the drama between the judge and his counsel unfold, believed that adequate representation from these attorneys was impossible. Thus, he asked to represent himself. The judge refused the request because the defendant had stated that he was "under duress." But the judge himself had created that duress. This dilemma permeated the entire trial.

{¶ 2} This court has a responsibility to preserve the integrity of the criminal justice system, which includes a duty to ensure that all defendants have received a fair trial from an impartial judge. Where the record demonstrates that that has not occurred, the remedy is a new trial. We are mindful of both the

anguish suffered by the family and friends of the victims and the substantial evidence of defendant's participation in a senseless murder.  Yet based on the highly extraordinary facts of this case, we are required to  reverse the convictions, vacate the death sentence imposed on defendant-appellant, Jason Dean, and remand this case for a new trial.  To that end, our decision follows.

**Case history**

{¶ 3}   Dean was accused of shooting at Yolanda Lyles and Andre Piersoll at a convenience store, shooting at the vehicle and home of Devon Williams, shooting at Shanta Chilton, Hassan Chilton, Shani Applin, and Applin's young child Jaida Bullock,[1] and then fatally shooting and robbing Titus Arnold.  Dean was indicted on two counts of aggravated murder.  Count 12 charged Dean with the aggravated murder of Arnold with prior calculation and design.  Count 13 charged him with the aggravated murder of Arnold while committing aggravated robbery.  Both counts included death-penalty specifications because these crimes represented a course of conduct, R.C. 2929.04(A)(5), and because the murder occurred during the aggravated robbery, and although he was not the principal offender, Dean committed the aggravated murder with prior calculation and design, R.C. 2929.04(A)(7).

{¶ 4}   Dean was also indicted on six counts of attempted murder:  Count 1 charged Dean with the attempted murder of Piersoll, Count 2 charged the attempted murder of Lyles, Count 7 charged the attempted murder of Shanta Chilton, Count 8 charged the attempted murder of Hassan Chilton, Count 9 charged the attempted murder of Shani Applin, and Count 10 charged the attempted murder of Jaida.

{¶ 5}   Dean was also indicted on eight additional counts.  Counts 5 and 6 charged Dean with discharging a firearm into an occupied structure.  Counts 3 and 14 charged him with aggravated robbery.  Counts 4, 11, 15, and 16 charged Dean

---

1.  Jaida is referred to as Jaeada Applin in Count 10.

with having a weapon under a disability. Additionally, firearm specifications were included under 12 counts of the indictment.

{¶ 6} Dean pleaded not guilty to all charges. However, the jury found Dean guilty, and he was sentenced to death.

{¶ 7} Dean now appeals to this court as a matter of right. In this appeal, Dean raises 23 propositions of law.

### Judicial bias and request for self-representation.

{¶ 8} In proposition of law I, Dean argues that the trial court erred by overruling his request to waive counsel and represent himself. In proposition of law III, Dean argues that his rights to a fair trial and due process were violated because the trial judge was biased against him and his attorneys. Because these issues are intertwined, we will address them together. In addition, an understanding of the pretrial history is necessary to set the stage for the resulting conflict.

{¶ 9} **1. Facts**. Before trial, the state certified to the court that disclosure of the address or whereabouts of a witness, Crystal Kaboos, Dean's girlfriend, might subject her to physical harm or coercion. See Crim.R. 16(B)(1)(e). Thereafter, defense counsel, Richard Mayhall and John Butz, requested a hearing on the state's certification.

{¶ 10} On April 24, 2006, the trial court held a hearing on the certification. No witnesses were called at the hearing, and the defense agreed to proceed on the basis of the state's averments. The state averred that threats had been made against Kaboos because she had testified against codefendant Wade. The trial court ruled that it "accepted the State's certification that the disclosure of witness Kaboos' address may subject her to physical harm or coercion. Accordingly, pursuant to Criminal Rule 16(B)(1)(e), the State need not disclose to the defense witness Kaboos' address."

**{¶ 11}** On May 3, 2006, the defense moved for the trial judge to disqualify himself from presiding over Dean's trial because the judge had heard evidence on the Crim.R. 16(B)(1)(e) certification. The defense invoked *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, paragraph one of the syllabus, which holds, "When the state seeks to obtain relief from discovery or to perpetuate testimony under Crim.R. 16(B)(1)(e), the judge who disposes of such a motion may not be the same judge who will conduct the trial." *Gillard*, which we overruled on other grounds, *State v. McGuire* (1997), 80 Ohio St.3d 390, 402-403, 686 N.E.2d 1112, adopted this rule because "when a judge hears information that a defendant has attempted to harm, coerce, or intimidate an opposing witness, there is an unnecessary risk that the judge will harbor a bias against that defendant." *Gillard* at 229. Nothing in the record establishes that the defense counsel, the trial judge, or the prosecutor was aware of, or remembered, the *Gillard* holding.[2]

**{¶ 12}** On May 4, 2006, the trial court held a hearing on the motion to disqualify. On May 5, the trial court overruled the motion for two reasons. First, the trial court anticipated "overwhelming evidence" of the defendant's guilt at trial, which would render any *Gillard* violation harmless. *Gillard*, 40 Ohio St.3d at 229, 533 N.E. 2d 272. Second, the trial court stated that it "has not heard any evidence about the defendant and whether or not he and/or alleged cohorts have threatened State's witnesses," as the certification hearing involved lawyer argument only.

**{¶ 13}** On May 8, 2006, jury selection began. On May 10, 2006, trial counsel filed an affidavit of disqualification against the judge. Trial counsel claimed in the affidavit that the judge had demonstrated bias and prejudice against

---

2. During oral argument, appellate counsel for the state, who was also the prosecutor at trial, acknowledged that he had also failed to bring *Gillard* to the court's attention. He stated that he had overlooked *Gillard* because he had been focused on preparing for trial.

the defendant by (1) overruling an unopposed defense motion to permit Dean to appear at trial without shackles, (2) presiding over the Crim.R. 16(B)(1)(e) certification hearing and then refusing to disqualify himself, and (3) prejudging the defendant's guilt by making the statement that the court anticipated the presentation of "overwhelming evidence of guilt." *Gillard*, 40 Ohio St.3d at 229, 533 N.E.2d 272.

{¶ 14} In response to the defense motion for disqualification, the state claimed that the affidavit of disqualification was a calculated and deliberate attempt to have the judge removed from the case. The state argued that trial counsel had neither raised the issue that the certification matter should be heard by another judge nor objected to the presiding judge's participation. The state supported its claim by providing an excerpt of an April 30, 2006 recorded phone conversation between Dean and his brother. This conversation suggested the possibility that the trial judge might not be able to remain on his case because he had presided over the *Gillard* hearing.

{¶ 15} On May 11, 2006, Chief Justice Thomas Moyer denied the affidavit of disqualification. Chief Justice Moyer stated, "Although on their face the judge's statements in his judgment entry may appear to suggest a predisposition in this case, * * * the tone and the content of [the judge's] response show that he is *neither biased nor prejudiced against the defendant*." (Emphasis added.)

{¶ 16} After the parties were notified of Chief Justice Moyer's decision, the relationship between the judge and the defense attorneys began to deteriorate. On May 12, 2006, the trial court and the parties discussed the denial of the affidavit of disqualification. The trial court informed trial counsel that it had "some very serious concerns about the allegations that were set forth in the State's response," even though both the judge and the prosecutor had also overlooked *Gillard*. Richard Mayhall, the lead defense counsel, denied doing anything

wrong. However, the trial court stated that the state's allegation, which makes "serious accusations against defense counsel[,] * * * on its face appears to be corroborated by several facts, and the Court maintains some very serious concerns about defense counsel and the manner in which they're operating in this courtroom." The trial court further stated that "in the interest of getting this case back on track, the Court will take that matter up at a later time; but I do assure the parties that that matter will be taken up * * *, preferably at the conclusion of this case."

{¶ 17} On May 15, 2006, John Butz, the assistant defense counsel, informed the trial court that defense counsel were concerned about possible disciplinary sanctions. Butz stated, "[Q]uite honestly, we don't think we can effectively represent Mr. Dean from this point on until whatever the issue is is resolved." Mayhall also told the court, "[A]fter your comments, I was intimidated; * * * if I did something wrong, I'll accept responsibility for it. But with this hanging over my head, * * * I don't think I'm willing to risk further angering you, and I think that would affect my ability to represent Mr. Dean."

{¶ 18} In response, the trial court repeated that he would "handle the matter" after trial and "didn't prejudge the situation." In response to a defense question about the allegations, the trial court stated, "I'm not saying that you're guilty of them, but it appears from the allegations that you were manipulating the Court and deceiving the Court in an effort to have this Judge removed from the case." The trial court also told counsel, "I'm sorry you guys got yourself into this situation; but we're going to proceed this morning."

{¶ 19} Later on the morning of May 15, trial counsel filed a motion to withdraw as counsel. The motion included Mayhall's and Butz's affidavits. Mayhall expressed concern about aggressively representing his client when doing so might further anger the judge and expose counsel to harsher punishment at the end of trial. Mayhall also stated that Dean was now potentially a witness against

6

him regarding what he actually told Dean about the judge's disqualification. Butz stated that the trial court's threat of contempt had caused him to be "physically and emotionally sick" and had had a "chilling effect" on his ability to zealously represent Dean.

{¶ 20} The trial court denied the motion to withdraw. The trial court stated that he "certainly had no intention of causing a chilling effect on defense counsel when it comes to zealously representing their client." He added, "Mr. Mayhall, I certainly have no problem with aggressive cross-examination. * * * I have no problem with objections that are made during the course of trial, and I have no problems with motions for mistrials if you think such motions are warranted." The trial court added, "I think that the events that happened last week — and, again, I'm not going to get to whether or not the allegations are true — but I think behavior in that fashion is something that this Court frowns upon. * * * I don't like manipulation, and I don't like — I just don't like playing games."

{¶ 21} On May 16, 2006, Dean informed the court that he did not feel he could receive a fair trial with current counsel. Dean said that he had "the impression" that his counsel had offended the court and that the judge was taking the matter personally. Dean requested new counsel or wanted to defend himself, a request he immediately asked to have stricken from the record. The trial court told Dean, "I'm giving them free rein to defend you in an ethical manner * * * and so far I see them doing that. So, I appreciate your concern, and I'll continue to monitor the situation."

{¶ 22} Thereafter, Mayhall sought clarification about the term "unethical." The trial court responded, "Manipulating the Court, defrauding the Court, deceiving the Court. I think that's unethical behavior; and if it's established that you did that, you'll be held accountable." In reply, Mayhall said, "If we could get the issue settled one way or another, then I can come to work every day and think about this case, not think about what's going to happen to me

three weeks from now when it's over.  And * * * I'll tell you, Judge, that's all I'm thinking about."  The trial court replied, "I didn't put you in that situation.  You put yourself there so I'm not here to bail you out.  You conduct yourself the way you think you should conduct yourself, and you deal with the consequences.  It's not my responsibility to hold your hand."

{¶ 23} The next day, Dean informed the court that his counsels' representation had continued to "deteriorate."  He said that his counsel had shown a "lack of enthusiasm in their cross-examination of the witnesses" and mentioned "their lack of objections."  Dean implored the court to resolve the allegations against his attorneys before the trial continued.  The trial court replied that earlier in the day, and with defense counsel's consent, it had explored with the prosecution options for resolving the allegations, including staying the trial.  However, the trial court had decided to continue with the trial, saying, "I stand behind the statement I made yesterday, that I did not put them in this situation.  They've put themselves in it.  * * * Your attorneys are concerned that they might be held in contempt.  I'm here to tell them to suck it up, be a professional, do the best job you can do."

{¶ 24} After the trial court denied counsels' motion to withdraw, Dean informed the court, "I'd like to relieve Mr. Mayhall and Mr. Butz in this case.  I believe it's my right to defend myself, and that's what I'd like to do at this point."

{¶ 25} The trial court discussed the timeliness of the request and asked whether it was being made for purposes of delay.  Dean told the court, "I'm willing to proceed immediately.  * * * This is not designed to delay this trial in any way."  The parties also discussed arranging a psychological evaluation to determine Dean's competency to waive counsel.  Trial counsel told the court that Dean had been evaluated extensively by Dr. Jeffrey Smalldon, a psychologist, and Dr. Smalldon would be able to address this issue without conducting a further examination.

**{¶ 26}** The trial court then questioned Dean to determine whether he fully understood and waived his right to counsel. During this colloquy, Dean informed the court that he was aware of the charges against him, that he understood that the death penalty was a possible sentence if he was found guilty of the capital specifications, and that he knew that he had the right to be represented by two capital-qualified attorneys throughout the proceedings. Dean also understood that he would be representing himself and would be responsible for cross-examining witnesses, making objections and arguments, and presenting his own witnesses.

**{¶ 27}** The trial court then questioned Dean regarding the voluntariness of his waiver. Dean stated that no one had made any promises or threats to get him to waive counsel. The trial court then conducted the following colloquy:

**{¶ 28}** "The Court: And is this something you want to do voluntarily?

**{¶ 29}** "The Defendant: Yes.

**{¶ 30}** "The Court: All right. Well —

**{¶ 31}** "The Defendant: I would just like the record to reflect that *I'm doing this under duress* due to you continually not addressing that issue of Mr. Butz's and Mr. Mayhall's alleged unethical actions. [Emphasis added.]

**{¶ 32}** "The Court: All right. Well, that's going to be a problem because I'm not going to accept a waiver of counsel if you're telling me it's under duress. All right. Because you're essentially saying that the Court's forcing you to do this, and I'm not going to put you or myself in that position."

**{¶ 33}** Following this exchange, the court recessed for the day to determine when Dr. Smalldon could testify about Dean's competence. The trial court added, "[I]t's going to give you a night to sleep on this and think about it. Certainly you can change your mind. But if you feel that you're doing this under duress, then that's going to be a problem. * * * I'm not going to let you do it because that's just not going to be appropriate."

**{¶ 34}** On the following day, the trial court asked Dean whether he still wanted to represent himself. Dean replied, "Absolutely." The trial court and Dean then had the following exchange:

**{¶ 35}** "The Court: All right. Well, I've had the evening to think about it; and as I told you yesterday when I was citing the case law, that you do have a constitutional right to represent yourself. The problem I foresee * * * as I indicated yesterday, is your statement that you were doing this under duress. * * *.

**{¶ 36}** "The Defendant: I just — I made that statement just so that would be made for the record on future reference for the appeal.

**{¶ 37}** "The Court: Well, I understand that. The problem is it's one of those things where * * * you've said it; and now it's out there, and I have concerns about letting you waive your right to an attorney because the way it appears, at least by your statement, is that I'm indirectly forcing you to do that.

**{¶ 38}** "The Defendant: That's not the case at all. As I said, the only reason I did that was for that to be on the record for future reference for my appeal in the process of this. I fully understand what I did, why I made that statement. * * *

**{¶ 39}** "I don't feel in any way that you're biased against me, prejudiced against me, have a vendetta against me. I feel completely confident to defend myself."

**{¶ 40}** Thereafter, the trial court overruled Dean's request to waive counsel because it was not "voluntary." The court stated, "I cannot accept a waiver of trial counsel in a capital case if there's any hint that it's not being done voluntarily and that it's being done under duress, especially because he's claiming that the duress or the pressure or the coercion is coming from the Court, whether directly or indirectly." The trial court said nothing about calling Dr. Smalldon as a witness.

{¶ 41} Following the trial court's ruling, Dean asked to retract his statement about waiving counsel under duress:

{¶ 42} "The Defendant: * * * *If necessary, I would like to retract any statements I made or any reference I made to being under duress* if that's the case. Strike that from the record. However you guys go about doing that.

{¶ 43} "I feel at this point it is impossible for Mr. Mayhall and Mr. Butz to defend me adequately in any way, shape, or form. And I — I need to defend myself because the truth needs to be [sic] come out here; and the way they're doing it, it can't happen. It just can't happen.

{¶ 44} "My constitutional rights are being violated. * * * I can't understand this at all. *Do I have the right to defend myself? * * ** I would like to be granted that. That's all I ask." (Emphasis added.)

{¶ 45} Thereafter, the trial court stated, "[Y]our position has been made clear for the record" and ordered the trial to continue. Dean said nothing further about representing himself.

{¶ 46} On June 13, 2006, after the trial had concluded and Dean had been sentenced, the trial court filed an entry finding Mayhall and Butz in direct criminal contempt and fining them each $2,000. The trial court made findings that "defense counsel, in a calculated scheme to remove this Court from the Dean case, manipulated the Court into presiding over a Criminal Rule 16(B)(1)(e) hearing so that the Court would be disqualified from presiding over the Dean trial pursuant to *Gillard*." The trial court determined that one of counsels' motives stemmed from "a longstanding personal revulsion of the Court, dating back to when this Judge was an assistant prosecuting attorney. Accordingly, the Court vehemently disagrees with Mr. Butz's statement that 'This is not a personal attack on the Court.' "

{¶ 47} The court of appeals reversed the findings of criminal contempt. *State v. Dean*, Clark App. Nos. 2006CA61 and 2006CA63, 2007-Ohio-1031. The

court held that Mayhall and Butz should have been afforded a hearing on the contempt allegations. Id. at ¶ 28. The court also held that "statements from the trial court indicated that the court's impartiality was impaired" and that a different judge should have conducted an evidentiary hearing. Id. at ¶ 32-33. On remand, the judge cited Mayhall and Butz for indirect criminal contempt and transferred the matter to a different judge for a hearing.[3]

{¶ 48} **2. Discussion**. The issues of judicial bias and the defendant's right to self-representation are inextricably entwined in this case. "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, citing *Rose v. Clark* (1986), 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460. Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191, paragraph four of the syllabus.

{¶ 49} In *Liteky v. United States* (1994), 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474, the Supreme Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." On the other hand, "[t]hey *may* do so [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they

---

3. Nothing in the record indicates the disposition of further proceedings in the case.

reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphasis sic.) Id.

{¶ 50} The record shows that the trial judge harbored a bias against defense counsel that was manifested through his comments and rulings during the trial. This bias first became apparent after counsel filed the affidavit of disqualification, and it continued throughout the rest of the proceedings. We will now review the trial judge's actions that lead us to this conclusion.

{¶ 51} As previously discussed, the trial judge suggested that counsel had manipulated, defrauded, and deceived the court in requesting him to preside over the certification hearing in order to disqualify him from sitting on the trial, even though the trial judge himself had a duty to be aware of *Gillard*. The trial judge threatened counsel with sanctions and warned them, "[I]f it's established you did that, you'll be held accountable." After counsel moved to withdraw from the case, the trial judge expressed his belief that counsel were using their concern about being held in contempt as "leverage to try to get this Court to come off of its stance to hold them accountable for anything they may have done."

{¶ 52} The trial court's accusatory and threatening comments toward counsel were made during judicial rulings and other matters during trial. Normally, such remarks would not establish judicial bias. *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147, 127 L.Ed.2d 474; see also *State v. Sanders* (2001), 92 Ohio St.3d 245, 278, 750 N.E.2d 90. However, the trial judge's comments provide evidence of judicial bias when they are considered in the context of the trial judge's other rulings and ill-tempered remarks during and after the trial.

{¶ 53} The trial court demonstrated this bias on other occasions by denying counsel reasonable opportunities to consult with Dean. In the first situation, Terry Smith, a jailhouse informant, testified during the state's case-in-chief about Dean's admissions to him describing his involvement in Arnold's murder. Smith also testified that Dean had admitted making disparaging remarks

about Arnold's family in letters that he had sent to Jason Mans. Following Smith's testimony, trial counsel asked for a recess to talk to Dean, and the following colloquy ensued:

{¶ 54} "Mr. Mayhall: And, you know, the only other person who knows anything about these statements would be my client. I would just like five or ten minutes to talk with him.

{¶ 55} "Mr. Schumaker [the prosecutor]: And *we have no objection to that*.

{¶ 56} "Mr. Mayhall. Okay.

{¶ 57} "The Court: All right. Hold on. This witness was disclosed on May 11 or May 12. That was — today's the 23rd. That was 12 days ago so we're not going to take trial time to do investigation so you can proceed with your cross-examination." (Emphasis added.)

{¶ 58} The trial court's refusal to provide counsel with five or ten minutes to talk with Dean, particularly when the state did not object to the recess, displayed antagonism toward the defense and was unreasonable. Moreover, the trial court's rulings ran in one direction. The trial court allowed the state to recall seven witnesses during the trial. The trial court also granted the state a delay in presenting its case after a videotape malfunctioned. Thus, the trial court's refusal to grant the defense a short recess was not justified by the need to avoid unnecessary delays.

{¶ 59} In another situation, the trial judge denied counsel a reasonable opportunity to consult with Dean after he informed counsel that he wanted to testify in his own behalf. After the lone defense witness testified, trial counsel informed the judge that Dean had changed his mind and wanted to testify. Trial counsel requested a recess to prepare Dean's testimony because they had not planned for him to testify. The trial court denied this request.

14

{¶ 60} Trial counsel replied that they would be committing ineffective assistance of counsel if they were not allowed to prepare Dean's testimony. The prosecutor replied that he had no objection to "about a ten-minute recess." The trial court stated, "I don't think they're going to say a ten-minute recess is sufficient to prepare their client for testimony in a capital murder case." The trial court then said, "[T]his is a unilateral decision of the defendant's * * *. And if he wants to get up here and tell his side of the story * * * I don't think it takes * * * much preparation for the defense attorneys just to say, 'What happened? What's your side of the story?' " The trial court also told counsel, "I understand your position. There's no question you're being put in a horrible position." In response, trial counsel stated, "Ten minutes is better than no time at all." The trial court then stated, "All right. We'll give you ten minutes." Thereafter, trial counsel informed the court that after consulting with Dean, "It is his wish not to testify and to allow us to rest and proceed to closing argument."

{¶ 61} Clearly, Dean's decision to testify in his own behalf was one of the crucial decisions of the defense case. The trial judge initially denied the defense a recess on the stated ground that the defense needed no additional time to prepare and present Dean's testimony. Trial counsel was ultimately given the ten minutes they requested to consult with Dean, their client on a death-penalty case. However, trial counsel requested ten minutes to consult with Dean only after the trial judge had initially denied counsel any additional time to talk with Dean. In this situation, the trial judge displayed annoyance and impatience with the accused and counsel. We also find that the trial judge's intemperate and one-sided comments manifested bias against them.

{¶ 62} Finally, the trial judge's finding of criminal contempt showed that his bias was based on feelings of ill will toward counsel that predated the trial. The trial judge found that one of counsels' motives for trying to remove him from the case was their "longstanding personal revulsion of the Court, dating back to

when this Judge was an assistant prosecuting attorney." He also stated that "defense counsel was setting the Court up for the next move" and characterized one of counsel's arguments as being cast "in a suspiciously enthusiastic tone."

{¶ 63} Unlike his other statements, the trial court's comments about counsel's "longstanding personal revulsion" were from an "extrajudicial source." *Liteky*, 510 U.S. at 555-556, 114 S.Ct. 1147, 127 L.Ed.2d 474. These comments, representing an "extrajudicial source," place the judge's other accusatory and threatening remarks into context. They show the likelihood that his earlier assurances that he would remain unbiased were untrue.

{¶ 64} The state responds to Dean's claims by pointing out that Dean told the judge that he did not believe that the judge was biased against him. During questioning about self-representation, Dean told the court: "I don't feel in any way that you're biased against me, prejudiced against me, have a vendetta against me."

{¶ 65} Even assuming that Dean did not feel the judge was biased against him, we note that his claim that the judge was biased against his counsel remains. Judicial bias exists if it is directed toward counsel. Indeed, "the judge who is so hostile to a lawyer as to doom the client to defeat deprives the client of the right to an impartial tribunal." *Walberg v. Israel* (C.A.7, 1985), 766 F.2d 1071, 1077.

{¶ 66} In sum, we find that the judge was biased against counsel to such a degree that fair judgment was impossible. *Liteky*, 510 U.S. at 555-556, 114 S.Ct. 1147, 127 L.Ed.2d 474. The judge's deep-seated bias against counsel also tainted his denial of Dean's request to represent himself at trial, creating the impossible conflict. We now address that issue.

{¶ 67} "The Sixth Amendment * * * guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio

St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." Id. at paragraph two of the syllabus; see also Crim.R. 44(A). If a trial court denies the right to self-representation when properly invoked, the denial is per se reversible error. *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, citing *McKaskle v. Wiggins* (1984), 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122, fn. 8.

**{¶ 68}** The assertion of the right to self-representation must be clear and unequivocal. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. A request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process. See *United States v. Frazier-El* (C.A.4, 2000), 204 F.3d 553, 559.

**{¶ 69}** Dean's request to represent himself was clear and unequivocal. Furthermore, we do not find Dean to be manipulative when he stated, "I'm doing this under duress." Rather, Dean invoked his right to self-representation because he was caught in the middle of a dispute between the judge and his counsel in a case in which his very life was at stake. The trial judge had demonstrated animosity toward his counsel since they filed the affidavit of disqualification against him. The trial judge accused counsel of serious misconduct, threatened to sanction counsel if he confirmed his suspicions, and denied their repeated requests to withdraw from the case even though they informed the court that the allegations had a "chilling effect" on their ability to zealously represent Dean. Dean was present and heard all these exchanges. Under these circumstances, Dean was legitimately concerned that the trial judge's animosity and bias against his counsel might interfere with his ability to receive a fair trial. Moreover,

Dean's motives for seeking to represent himself should have been clear to the judge because of what had occurred with counsel up to that point.

{¶ 70} Matters then worsened. When it was clear to Dean that the judge would not allow him to represent himself because of his statement about acting under duress, Dean attempted to retract the statement. The trial judge rejected Dean's attempt to retract his statement. Dean argued that his feelings of duress simply reflected his own doubts about his counsel's willingness to represent him effectively; Dean tried to assert that his request to waive counsel was truly voluntary. Dean's explanation was not persuasive; he was clearly backtracking to try to persuade the judge to allow him to represent himself.

{¶ 71} *United States v. Garey* (C.A.11, 2008), 540 F.3d 1253, supports Dean's argument. In *Garey*, three days before trial, the defendant filed a motion to disqualify counsel, alleging conflicts of interest and irreconcilable differences with him. Id. at 1258-1259. The defendant requested substitute counsel. Finding no conflicts, the trial judge denied these requests. The judge then explained to the defendant his options and asked whether he wished to proceed to trial with his appointed counsel or wished to represent himself. The defendant replied, "I am not going to let [appointed counsel] represent me," and "I'm going to involuntarily represent myself * * *." Id. at 1259-1260. The trial court ruled that the defendant could represent himself because he had "knowingly and voluntarily decided to proceed with representation of himself." Id. at 1260. The defendant appealed, claiming that the court denied him his Sixth Amendment right to counsel because he had never affirmatively asked to represent himself. Id. at 1262.

{¶ 72} The trial court's ruling was upheld on appeal. The court stated that a defendant may "intentionally and voluntarily waive his right to counsel and accept the consequent necessity of self-representation in more than one way." *Garey*, 540 F.3d at 1265. The court stated, "So long as the trial court is assured

18

the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in its exercise of its discretion, discharge counsel * * *." Id. at 1267. In finding the defendant's request voluntary, the court stated, "No less than four times, Garey rejected [his counsel's] representation outright, and several times more he expressed his intent to represent himself (albeit 'involuntarily'). By rejecting appointed counsel, Garey voluntarily chose to proceed pro se as surely as if he had made an affirmative request to do so." Id. at 1269.

{¶ 73} In this case, the scenario was even more complicated. There is no evidence that Dean was dissatisfied with his attorneys until the dispute arose between counsel and the judge. Dean did not become concerned that his attorneys could not represent him until counsel began telling the judge that they could not do so. After the judge refused their request to withdraw, Dean saw self-representation as his only hope, a choice that the judge refused. This unique scenario may have no precedent, but it clearly resulted in a tainted trial, with the defendant caught in the middle.

{¶ 74} As in *Garey*, Dean understood the choices before him regarding representation, he was fully advised about the potential dangers of proceeding pro se, and he rejected repeatedly the attorneys assigned to represent him. Under these circumstances, the trial court abused its discretion by finding that Dean's request for self-representation was involuntary and by refusing to allow him to proceed pro se, especially when the trial judge's own conduct resulted in the trial court's finding of involuntariness.

{¶ 75} Based on the foregoing, we find that propositions I and III have merit, and the convictions and the sentence must be vacated. We do not reach this decision lightly. However, we must ensure that a defendant's constitutional right to self-representation is protected and that we maintain the integrity of our judicial

system. Moreover, this case clearly went beyond the normal disputes that sometimes arise between counsel and the trial judge during trial. Here, the disputes directly infringed upon the defendant's right to self-representation.

{¶ 76} Because of our disposition of this case, the remaining issues raised in the appellant's brief are moot.

Judgment vacated

and cause remanded.

BROWN, C.J., and PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Darnell Carter and David Wilson, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Joseph E. Wilhelm, Kathryn L. Sandford, and Jennifer A. Prillo, Assistant Public Defenders, for appellant.

_____