[Cite as *State v. Jordan*, 2025-Ohio-5859.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                           No. 115131

    v.                                :

DANTE JORDAN,                           :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 31, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-673061-A, CR-22-675801-A, and CR-23-677860-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jordan Mason, Assistant Prosecuting Attorney, *for appellee*.

Kenneth D. Myers, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Dante Jordan ("Jordan") challenges the sentence imposed following his convictions for various charges of burglary and theft. He raises two assignments of error:

1. Appellant's sentence violated appellant's constitutional right to due process in that the trial judge exhibited bias and prejudice.

2. The trial court's sentence was disproportionate.

{¶ 2} After a thorough review of the applicable law and facts, we find that the sentence imposed was neither disproportionate nor a product of judicial bias. We affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} Jordan was indicted on 22 counts of burglary, grand theft, and petty theft over three separate cases resulting from his commission of a series of home break-ins. This matter was previously before this court in *State v. Jordan,* 2024-Ohio-2361 (8th Dist.) ("*Jordan I*"), and the facts were summarized as follows:

> The state alleged that Jordan burglarized 14 different homes between December 4, 2021, and January 11, 2023. The state charged Jordan in Cuyahoga C.P. No. CR-22-675801 with ten counts of burglary, nine counts of theft (three of which identified the victims as elderly or disabled), two counts of grand theft (two firearms), and one count of petty theft. In Cuyahoga C.P. No. CR-22-673061, the state charged him with three counts each of burglary and theft. And in Cuyahoga C.P. No. CR-23-677860, the state charged Jordan with one count of burglary and theft.
>
> In September 2023, the cases were scheduled for trial. Following a brief recess, the state presented the trial court with an accepted packaged plea agreement, along with an agreed, recommended sentence of 15-18 years, with the condition of no early release. In Case No. 675801, Jordan pleaded guilty to five counts of burglary, in violation of R.C. 2911.12(A)(2) (Counts 1, 5, 11, 15, and 17); three counts of theft, in violation of R.C. 2913.02(A)(1) (Counts 4, 6, and 10); and one count of grand theft, in violation of R.C. 2913.02 (Count 18). Regarding Case No. 673061, Jordan agreed to plead guilty to two counts of burglary (Counts 3 and 5) and one count of theft (Count 2). And in Case No. 677860, he agreed to plead guilty to one count of

burglary (Count 1). In addition to pleading guilty, Jordan also agreed to have no contact with the victims and pay restitution.

The following day, the trial court sentenced Jordan to a stated minimum prison term of 32 years with a maximum of 36 years and ordered him to have no contact with the victims and pay restitution.

*Id.* at ¶ 2-4.

{¶ 4} On appeal, Jordan argued that his guilty plea was not knowingly, voluntarily, and intelligently made because, inter alia, he believed that he would receive the agreed, recommended sentence of 15 to 18 years.[1] The *Jordan I* Court found merit to his argument. With regard to his sentence, the panel stated:

[W]e find that Jordan had a reasonable expectation that the trial court would implement a sentence within the agreed sentencing range of 15 to 18 years. During the state's presentation of the plea, Jordan expresse[d] confusion about "no early release." The court explained that under the plea agreement, Jordan would "do 15 to 18 years and you don't get out early," and "[y]ou do every day of the 15 years." Additionally, the state acknowledged during the plea hearing that the only promise made to Jordan was the agreed, recommended sentence of 15 to 18 years, with no early release, restitution, and no contact with the victims. The court reiterated this promise when the court asked Jordan whether "anyone promised you anything outside of what we've said in court this morning to get you to enter into this plea agreement." When Jordan noted he was told "concurrent time," the court rightfully advised him that he was not promised that — the agreement did not include concurrent time, but rather 15-18 and no early release.

*Id.* at ¶ 28.

---

[1] Jordan also challenged his trial counsel's representation, the trial court's unlawful imposition of consecutive sentences, and a sentence imposed on a dismissed count, but the court ultimately determined that these assigned errors were rendered moot. *Id.* at ¶ 34.

**{¶ 5}** The *Jordan I* Court agreed with the State's assertion that "the trial court advised Jordan that it had not promised him any particular sentence, including the sentence agreed to by the state." *Id.* at ¶ 24. However, the panel stated:

> [A]fter the trial court decided it would not impose the agreed, recommended sentence but would impose a sentence nearly double than what was agreed and recommended by the state and the defense, it should have given Jordan an opportunity to reconsider his guilty plea.
>
> . . .
>
> The record is clear that the trial court knew at the time of the plea the nature of the offenses, Jordan's criminal history (including his current confinement), and that Jordan allegedly committed some of the offenses while on parole supervision and wearing a GPS monitoring device. In fact, the trial court wanted to proceed directly to sentencing after accepting Jordan's plea, without obtaining a presentence-investigation report, even though there were multiple victims who were seeking restitution and were not present that day to provide impact statements. The trial court's desire to proceed directly to sentencing would also lend credence to Jordan's reasonable expectation that the trial court would impose a sentence within the agreed sentencing range.
>
> If the trial court's decision to proceed directly to sentencing was based on its predetermined intention that it would not sentence Jordan in accordance with the agreed, recommended sentence, then the trial court erred in accepting Jordan's plea without advising the parties that it was not accepting the recommended sentence. When a trial court decides not to impose the agreed, recommended sentence, it should clearly advise a defendant of its intentions, and allow the defendant to reconsider his plea. *State v. Swortchek*, 2020-Ohio-2831, ¶ 25 (8th Dist.), citing [*State v.*] *Dunbar*, 2007-Ohio-3261, at ¶ 140 (8th Dist.), citing [*State v.*] *Allgood*, 1991 Ohio App. LEXIS 2972, at *10 (9th Dist. [June 19,1991]). If Jordan had then chosen to still plead guilty, there would be no error because he would have been fully informed that the court was not imposing sentence as agreed and recommended.
>
> Regardless of when the trial court in this case determined that it would deviate from the agreed, recommended sentence, we find that the trial

court committed error because it did not expressly reject the agreed, recommended sentence prior to accepting Jordan's guilty plea or give Jordan an opportunity to withdraw his plea.

*Id.* at ¶ 25 and 27-29 (8th Dist.).

{¶ 6} The panel ultimately held that Jordan's plea was not knowingly made because the court had not given him an opportunity to change or withdraw his plea when it imposed a substantially greater sentence than what had been agreed upon and recommended by the State.

{¶ 7} On remand, the court held a new plea hearing. The State outlined a plea deal where Jordan would enter the same plea as he had previously, but the agreed recommended sentencing range was 14 to 17 years instead of 15 to 18.

{¶ 8} The court told Jordan then, if it were to sentence him to the same 32-year sentence, it would not permit Jordan to withdraw his plea because of the length of the sentence. Jordan acknowledged that he understood. The court began its colloquy with Jordan; however, the hearing was derailed when Jordan provided an unsatisfactory answer about his level of education. The court adjourned the hearing, essentially finding that Jordan would not be making a knowingly, voluntary, and intelligent plea and stating that Jordan would go to trial. The court later granted Jordan's request to be referred for a psychiatric evaluation.

{¶ 9} Another plea hearing was held several months later. The State outlined the plea agreement with a recommended sentence of 14 to 17 years. The court addressed Jordan and advised him that "despite there being an agreement between

your side and the State of Ohio . . . the Court is not bound to go along with that."

(Tr. 93-94.) Jordan indicated that he understood.

{¶ 10} The court then informed Jordan of the potential penalties and the effect of the Reagan Tokes Act on his sentence. The court reiterated twice that it was not bound by the recommended sentence, and both times, Jordan stated that he understood.

{¶ 11} At the subsequent sentencing hearing, the court indicated that it had reviewed Jordan's presentence-investigation report and stated as follows:

> There has been an agreed term of sentence as part of this plea agreement in this second handling of the case. The Court made it clear at the plea that it was not inclined to follow the recommendation of the parties. Mr. Jordan has a significant criminal history. He has three pages of offenses in juvenile court, and it's hard for this Court to remember, serving over 26 years in this position, whether I have ever seen a three[-]page juvenile criminal history.
>
> Mr. Jordan was on post-release control when he committed all of these offenses. Additionally, he was wearing an ankle monitoring device while committing these offenses. He had pled guilty to aggravated assault in Case 622809 in 2018, and served a prison term that was to run consecutive to Case 627230. He has already received consecutive sentences prior to these three new cases.
>
> In Case 627230 he pled guilty to burglary, a third[-]degree felony. He was sentenced to 30 months.
>
> He also had a receiving stolen property case in 2018 in Case 624439.
>
> He had a receiving stolen property in Case 626769.
>
> He had another receiving stolen property case in Case 628201.
>
> And lastly, another [receiving stolen property] case, Case 624193.

(*Id*. at 107-108.)

{¶ 12} Defense counsel moved for the court to recuse itself, arguing that the trial court had displayed bias against Jordan. In particular, defense counsel cited negative statements made by the trial court about Jordan, the prosecutor's office, and the panel in *Jordan I*. The trial court denied the motion, noting that Jordan had not filed an affidavit of disqualification with the Ohio Supreme Court. Jordan ultimately pled guilty in accordance with the plea agreement.

{¶ 13} At the sentencing hearing, the prosecutor provided details about several of the burglaries. Some of the victims also spoke as to what had occurred and how Jordan's actions had affected them.

{¶ 14} The court then heard from Jordan, who apologized to the victims, their families, and his own family. He stated that he had learned his lesson and asked for another chance.

{¶ 15} The court imposed the same sentence that it had previously imposed. With regard to the imposition of consecutive sentences, the court stated:

> Now, in casting a sentence, the Court is required to consider the seriousness and recidivism factors. The Court has done so. And they are not favorable to Mr. Jordan. Mr. Jordan was on post-release control when he committed all of these offenses. Not only was he on post-release control, but he was wearing an ankle monitoring device, making these cases virtually untriable [sic]. His location at the scene of each of these break-ins has been determined electronically. Mr. Jordan was on post-release control for another burglary offense. And he had already been sentenced to consecutive sentences by [another trial judge], who is not known for being a hammer, so to speak.
>
> Mr. Jordan was incarcerated consecutively and concurrently on five or six felony cases. Mr. Jordan's juvenile history is also significant, as the Court previously mentioned, and contains adjudications of delinquency for breaking and entering and theft in the case dating to

2013, DL-13-114371; criminal trespass in DL-13-116327; burglary in 2014 in Case 14-108098; burglary in case DL-14-14469; burglary, in case DL-15-109006; breaking and entering in Case DL-15-109713.

There are other theft type cases that I don't feel the need to detail from his juvenile court days. The argument has been made that 32 years is too much, that he won't have a chance to rehabilitate himself. He had a chance to rehabilitate himself the first time. He got out, not only did he commit more burglaries, he committed a record number of burglaries in five weeks in Cuyahoga County. Not only these pleas, which initially doesn't sound like such a bad thing, until you consider some of the victim impact statements that were read into the record. People who were burglarized, lost things in addition to their sense of security. All of those individuals lost their sense of security. [Victim T.F.] is still not comfortable staying home alone. At least two of these victims not only lost things, they lost their apartments, they were evicted by their landlords. As a result of this [Victim A.B.] has been sued for breach of her lease. So she was double victimized, maybe triple victimized, things — sense of security and a place where she lived. Anyone looking at this case cannot dismiss this as minor.

I don't know what goes on in other courtrooms, and frankly, that's not of a concern to me. I am surprised at the prosecutor's office with unexplainably diminished the range on the low and high end. Perhaps the marking supervisor -- I suspect the marking supervisor did not have access to [Victim A.B.'s] statement or the other statements given by the victims here.

So there will be consecutive sentences imposed. They will be imposed because of several reasons. We can check option A, B or C on your consecutive language cheat sheet here.

First of all, Mr. Jordan was on post-release control when he committed all of these offenses. That is distressing for many reasons. I'm sure law enforcement and the State of Ohio is relieved that they have such powerful evidence to prove guilt in this matter. The ankle monitoring device did little to prevent Mr. Jordan from continuing his line of work. Mr. Jordan, from the record I just read, is a professional burglar. He has been doing it since before he was an adult; he did it prior to these cases; he did it while on post-release control; and I am convinced that he will continue to do it, if given a chance.

Unfortunately, Mr. Jordan has dug his own hole in society. No one will hire him, should he be given freedom. His employment prospects are extremely low. So what to do with Mr. Jordan? Mr. Jordan is best kept from society, because this Court finds and feels and knows that there will be more victims of Mr. Jordan had been given the chance to live free amongst the law-abiding citizens.

[Victim N.B.] said something that stood out to me that I feel I must address. You got yourself a Simply Safe home security subscription, "Because it is something I should have done already."

That's pathetic. In Japan nobody fears burglary or theft. That society is one of the safest around. But here, to hear a victim feel that a security system is the cost of doing business in this free democracy should make all of us question our tolerance level for serious violent crimes as burglaries are. Burglaries are classified as violent crimes. We should not tolerate or expect that burglaries are going to happen. I'm not saying that you're wrong in taking precaution such as this. But the fact that we have to and we should just accept the fact we have to pay money to a security company, does not say much good about who we allow to live in our presence.

So, Mr. Jordan, you are an easy call for consecutive time, given the just severe amount of harm that you've caused those separate incidents here, and your prior criminal history shows that you will continue to do this again and again and again.

Judge Stephen McIntosh in Franklin County said something to me years ago that has always stuck with me, judicial philosophy. There are two kind of defendants those that we're mad at, those that we're scared of. The ones we're mad at are the low-level offenders, drug offenders who do what they're supposed to do. Somebody who might be thieving to support their habit.

The people we're scared of are the people such as Mr. Jordan, violent offenders who steal people's sense of security, who are predatory in how they go about doing their business and who do not commit crimes of violence. And again, burglary is a non-expungable offense, because it is a crime of violence. Mr. Jordan, we build prisons to keep people like you from law-abiding citizens, from who people to feel they should be able to go on academic work trips or family vacations or to their mom's funeral without having to have their sense of security violated.

So I am going to sentence you the exact same way I sentenced you the first time. The reviewing court can do what they want. I'm going to assume you're not going [to] like this and withdraw your plea, and I'm going deny that in advance.

. . .

As far as justifying consecutive sentences, I will go with option A. The Court imposes prison term[s] consecutively finding that consecutive service is necessary to protect the public from future crime and to punish the defendant. Consecutive sentences are not disproportionate to the seriousness of the defense's conduct and to the danger the defendant poses to the public, in that the defendant committed one or more — frankly all of these offenses while he was under post-release control for a prior offense.

So 32 to 36 years is not disproportionate to the disruption to those families' lives, considering his criminal history of burglary and the likelihood that he will definitely do it again if he's released in his 30s. Statistics show people still recidivate highly in their 30s; in their 50s, less so.

So to keep society safe, a lengthy sentence is needed, and will be imposed.

(*Id*. at 138-144, and 146-147.)

{¶ 16} Jordan then filed the instant appeal.

## II. Law and Analysis

{¶ 17} In his first assignment of error, Jordan argues that his due-process rights were violated because the trial court exhibited bias and prejudice in imposing his sentence. In support of this argument, Jordan contends that the trial court judge was hostile toward him, prejudged his guilt, called him a "bad person" in chambers, and falsely accused Jordan of lying to the court. Jordan further cites the trial court's

animosity toward this court and the prosecutor's office following the remand in *Jordan I*.

{¶ 18} Appellate courts generally "lack the authority to find that a judge was biased against a party or void a trial court's judgment on a claim that the trial judge was biased." *State v. Reese*, 2019-Ohio-4670, ¶ 25 (8th Dist.), citing *State v. Ramos*, 88 Ohio App.3d 394, 398 (9th Dist. 1993), citing *Beer v. Griffith*, 54 Ohio St.2d 440 (1978). Rather, "[t]he chief justice of the Supreme Court of Ohio, or his [or her] designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *Jones v. Billingham*, 105 Ohio App.3d 8, 11 (2d Dist. 1995), citing Ohio Const., art. IV, § 5(C).

{¶ 19} Nevertheless, "it is axiomatic that the Due Process Clause requires a fair trial in a fair tribunal before an impartial judge with no actual bias against the defendant or interest in the outcome of his particular case." *Cleveland v. Goodman*, 2020-Ohio-2713, ¶ 16 (8th Dist.), citing *Bracy v. Gramley*, 520 U.S. 899, 905 (1997); *State v. LaMar*, 2002-Ohio-2128, ¶ 34. Thus, the Ohio Supreme Court has recognized that proceedings before a biased judge are fundamentally unfair and deny a defendant due process of law. *State v. Dean*, 2010-Ohio-5070, ¶ 48, citing *LaMar* at ¶ 34, citing *Rose v. Clark* 478 U.S. 570, 577 (1986). Accordingly, "a trial court's judgment may be reversed due to bias if the bias or prejudice violated the defendant's right to due process and deprived the defendant of a fair proceeding." *State v. Robinson*, 2022-Ohio-1311, ¶ 88 (8th Dist.), citing *Dean* at *id*.

{¶ 20} Judicial bias has been described as

> "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*Dean* at *id.*, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. "If the trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, this does not rise to the level of judicial bias, "'unless [the opinions] display a deep-seated favoritism or antagonism that would make fair judgment impossible.'"" *State v. Hough*, 2013-Ohio-1543, ¶ 11 (8th Dist.), quoting *Dean* at ¶ 49, quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).

{¶ 21} In examining whether purported judicial bias resulted in a due-process violation, we presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and "'the appearance of bias or prejudice must be compelling in order to overcome the presumption.'" *State v. Eaddie*, 2018-Ohio-961, ¶ 18 (8th Dist.), quoting *State v. Filous*, 2016-Ohio-8312, ¶ 14 (8th Dist.). To overcome the presumption, an offender must link the court's inappropriate comments to the court's decisions. *State v. Munoz*, 2023-Ohio-1895, ¶ 24 (8th Dist.), citing *Dean* at ¶ 52.

{¶ 22} A review of the record reveals that the trial court had strong feelings about the case; however, the transcript reveals no bias against Jordan. And Jordan cannot link any of the judge's statements to its ultimate sentencing decision. The sentence imposed by the trial court judge was not the product of bias; rather, it was

based on Jordan's criminal history, the facts underlying the charges, the fact that Jordan was on postrelease control and a GPS monitor at the time of the instant charges, and the statements of the victims. "It is not reversible error for a sentencing judge, in explaining his sentence, to make critical statements about a defendant's conduct based upon the facts of the case presented to the court." *Parma Hts. v. Owca*, 2017-Ohio-179, ¶ 54 (8th Dist.), citing *State v. Power*, 2013-Ohio-4254, ¶ 27 (2d Dist.).

{¶ 23} We also do not find that the trial court exhibited bias against Jordan when it spoke negatively about this court and the outcome of *Jordan I*. At the resentencing hearing, the trial court made several unfavorable statements about the *Jordan I* panel's decision to reverse and remand the matter. Such remarks could convey an impression of animus toward this court, the proceedings, and potentially, as argued by Jordan, to the defendant himself. *State v. Jackson*, 2025-Ohio-2634, ¶ 21 (11th Dist.). Regardless of a trial court judge's personal opinion of the outcome of an appeal, we would encourage trial courts to conduct resentencing hearings without injecting impertinent commentary.

{¶ 24} Nevertheless, after a careful review of the record, we find Jordan has failed to overcome the presumption that the trial court was unbiased and unprejudiced against him. The first assignment of error is overruled.

{¶ 25} In Jordan's second assignment of error, he argues that his sentence was disproportionate to the crimes committed. He argues that there were no assaults, injuries, or deaths in the crimes and that "crimes of violence, including

murder, rape and kidnapping[,] come with equal or lesser sentences than in this case." He further points to his young age of 24 and that the State recommended a sentence of 14 to 17 years, which was one year *less* than the total potential sentence it had recommended in *Jordan I* and less than half of the time actually imposed by the court.

{¶ 26} R.C. 2953.08(G)(2), which guides our review of consecutive-felony sentences, "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under . . . (C)(4) of section 2929.14[.]" *State v. Marcum*, 2016-Ohio-1002, ¶ 22; *see also State v. Jones*, 2020-Ohio-6729, ¶ 28; *State v. Roberts*, 2017-Ohio-9014, ¶ 10 (8th Dist.) ("[i]f the court made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we 'clearly and convincingly' find that the record does not support the court's findings," quoting R.C. 2953.08(G)(2)); *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 19 (8th Dist.).

> The statute is written in the negative; that is, an appellate court does not need to clearly and convincingly find that the record supports the findings in order to affirm, but instead must clearly and convincingly find that the record does not support the findings in order to reverse or modify a sentence.

*Roberts* at ¶ 10.

{¶ 27} In the instant matter, the trial court imposed a sentence that contained both consecutive and concurrent sentences. The parties do not dispute that the trial court made the requisite findings on the record. As such, our review is limited to whether the record clearly and convincingly does not support the lower

court's findings under R.C. 2929.14(C)(4) as applied to the consecutive sentences imposed.

{¶ 28} The Ohio Supreme Court has had the opportunity to consider and reconsider the scope of and standard for appellate review of consecutive sentences, including whether the aggregate sentence should be part of the analysis and the deference to be afforded to the trial court's decision. These inquiries have been conducted through a series of opinions culminating in plurality opinions in *State v. Gwynne*, 2023-Ohio-3851 ("*Gwynne V*"), and *State v. Glover*, 2024-Ohio-5195.

{¶ 29} The plurality decision in *Glover* stated that appellate review of the aggregate sentence is not required by the statute. This court has suggested, however, that the R.C. 2929.14(C)(4) proportionality finding requires the trial court to consider the aggregate prison term resulting from the imposition of multiple, consecutive sentences. *State v. Hayes*, 2024-Ohio-845, ¶ 35 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only), citing *Gwynne V* at ¶ 81, 94 (Brunner, J., dissenting).

> "R.C. 2929.14(C)(4) requires a proportionality analysis, meaning that a sentencing court must consider the aggregate term of imprisonment to be imposed because, without such consideration, there is no coherent way to evaluate whether multiple, consecutive sentences are proportional to an offender's overall conduct for which the sentences have been imposed."

*Id.*, quoting *id.*

{¶ 30} Jordan maintains that his aggregate sentence is disproportionate because it is double what the State offered in the plea agreement. However, "nothing

in the appellate-review statute allows a court of appeals to consider a plea offer or a [S]tate's sentencing request in its review of consecutive sentences. The court of appeals must limit its review to the trial court's findings." *Glover* at ¶ 57.

{¶ 31} Jordan further argues that his sentence was "wildly disproportionate to normal sentences; crimes of violence, including murder, rape and kidnapping come with equal or lesser sentences than in this case." (Jordan's brief, p. 37.) Again, Jordan's argument is misguided. The *Glover* Court addressed such an argument after the appellate court had modified the defendant's sentence based, in part, upon sentences from other cases. The *Glover* Court noted that the statute "does not ask the court of appeals to engage in a comparative analysis of other cases." *Id.* at ¶ 59. The Court further noted two problems with such an analysis, which are also present in the instant matter: (1) we cannot determine if the sample of cases selected by Jordan was in any way representative, and (2) comparing sentences in other cases "fails to account for the myriad of case-specific factors that influence a trial court's sentencing decision in a particular case." *Id.*

{¶ 32} Accordingly, we may only examine Jordan's sentence as it relates to the court's statutory findings and the record in support thereof. In rendering its sentence, the trial court emphasized Jordan's criminal history and the fact that Jordan had committed the current crimes while on postrelease control. Jordan was on postrelease control after serving six years in prison for a burglary case out of Lake County, and he committed the present crimes while wearing an ankle monitor. The court noted that the cases before it represented Jordan's eighth, ninth, and tenth

felony cases in Cuyahoga County and that he also had a juvenile record. The court was also clearly impacted by the statements of the victims when it analyzed the seriousness of Jordan's conduct and the need to protect the public.

{¶ 33} Jordan further cites the trial court's "anger" at the appellate court and the court's reference to its neighbors who had been victims of crime and the effects it had upon them. While the trial court was obviously displeased with our remand of *Jordan I*, we cannot find that this had any effect on the Jordan's sentence — the trial court imposed exactly the same sentence that as it had previously. And the court's reference to its neighbors' experience with crime was also not improper. "A judge's sentencing requires the exercise of personal judgment; the court is not required to divorce itself from all personal experiences and make his decision in a vacuum." *Cleveland v. Jennings*, 2000 Ohio App. LEXIS 590, *6 (8th Dist. Feb. 17, 2000), citing *State v. Cook*, 65 Ohio St.3d 516, 529 (1992).

{¶ 34} After due consideration of the proceedings below, and being mindful of the deference due to the trial court, we cannot clearly and convincingly find that the record in this instance does not support the trial court's proportionality finding regarding the imposition of consecutive sentences in this case.

{¶ 35} Both of Jordan's assignments of error are overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR