[Cite as *State v. Lawson*, 2014-Ohio-879.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    12 MA 194 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| SHEILA LAWSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Youngstown
                                                            Municipal Court, Case No. 12CRB638.

JUDGMENT:                                         Affirmed.

APPEARANCES:
For Plaintiff-Appellee:                           Attorney Dana Lantz
                                                            Prosecuting Attorney
                                                            Attorney Kathleen Thompson
                                                            Assistant Prosecuting Attorney
                                                            26 South Phelps Street, 4th Floor
                                                            Youngstown, Ohio  44503

For Defendant-Appellant:                      Attorney Richard Agopian
                                                            1415 West Ninth, 2nd Floor
                                                            Cleveland, Ohio  44113

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                                            Dated:  March 5, 2014

[Cite as *State v. Lawson*, 2014-Ohio-879.]
VUKOVICH, J.

{¶1} Defendant-appellant Shelia Lawson appeals from her convictions and sentence in Youngstown Municipal Court for domestic violence and intimidation. Five issues are raised in the appeal.

{¶2} The first issue is whether Lawson was denied the right to counsel at trial. The second issue is whether Lawson's speedy trial rights were violated. The third issue is whether appellant was denied her right to talk privately with counsel during her arraignment. The fourth issue is whether the domestic violence and intimidation convictions are against the manifest weight of the evidence. The fifth issue is whether the state met its burden of production for both offenses.

{¶3} For the reasons expressed below the conviction and sentence are hereby affirmed.

Statement of Case

{¶4} In the early morning hours of March 29, 2012. Mr. June Lawson, appellant's father, made two 911 calls from his residence at 950 Katherine Avenue, Youngstown, Ohio. Those calls resulted in the dispatch of Youngstown police officers to the residence due to a domestic situation between Mr. June Lawson and appellant.

{¶5} Officer Carlos Eggleston and Officer Shakir Perkins responded to the call. Both testified that appellant was yelling profanities and was volatile. 09/26/12 Tr. 293, 324-325. Officer Eggleston testified that appellant told him that she hit her father because he was getting on her nerves. 09/26/12 Tr. 292. Officer Perkins testified that he witnessed appellant lunge at her father and punch him in the face. 09/26/12 Tr. 325.

{¶6} As a result of her admission and the officer witnessing her punch her father, appellant was arrested. During the arrest, as appellant was being taken to the car, she told her father that she was going to kick his "butt" as soon as she got out of jail. 09/26/12 Tr. 326.

**{¶7}** As a result of those actions, appellant was charged with domestic violence, in violation of R.C. 2919.25(A), and intimidation, in violation of R.C. 2921.04(B). Both offenses are first-degree misdemeanors.

**{¶8}** On March 30, 2012, at the arraignment, appellant pled not guilty and was appointed counsel. Following a dialog between the court and appellant, the court ordered a competency evaluation and the judge recused himself. The judge recused because appellant had a lawsuit pending against the city and the Youngstown Municipal Court, including its judges.

**{¶9}** A visiting judge was then assigned by the Ohio Supreme Court. Appellant fired her appointed counsel and hired new counsel. The case proceeded with discovery requests that were complied with. However, appellant would not comply with the competency evaluation and was eventually jailed until she complied.

**{¶10}** One month prior to trial, appellant fired her retained attorney. She was ordered to inform the court of new counsel. Appellant was unable to find counsel to represent her. Thus, the trial court appointed shadow counsel and the case proceeded to trial on September 26, 2012.

**{¶11}** Following testimony from the victim, the two police officers, and appellant's mother, the jury found her guilty of both charges.

**{¶12}** As to the domestic violence conviction, appellant was sentenced to 120 days, given credit for 20 days and the remainder was suspended. For the intimidation conviction, she was sentenced to 20 days and given credit for time served. In addition to those sentences, she was also ordered to pay a $200 fine, ordered to serve 6 months of supervised probation, ordered to complete anger management counseling, and have an assessment at Turning Point and submit to any treatment ordered. 10/16/12 J.E. Appellant filed a timely notice of appeal.

<u>First Assignment of Error</u>

**{¶13}** "The trial court erred in that appellant was denied the constitutional right to counsel pursuant to the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment."

{¶14} The Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, provide that a criminal defendant has the right to assistance of counsel for her defense. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963); *State v. Martin,* 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, ¶ 22. This right to counsel applies in misdemeanor cases, including cases involving petty offenses that result in imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006 (1972); *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158 (1979).

{¶15} The Sixth Amendment also "guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 67 citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975). "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Dean* quoting *Gibson* at paragraph two of the syllabus; *see also* Crim.R. 44(A).

{¶16} There is no prescribed colloquy that the trial court must employ with a *pro se* defendant before a defendant may waive his right to counsel. *State v. Martin,* 8th Dist. No. 80198, 2003–Ohio–1499, citing *State v. Jackson*, 145 Ohio App.3d 223, 227, 762 N.E.2d 438 (8th Dist.2001). That said, there is a presumption against waiving a constitutional right, and thus, the trial court must ensure that the defendant is aware of "the dangers and disadvantages of self-representation" and that he is making the decision with his "eyes open." *Faretta* at 835*.*

{¶17} In this case, it is undisputed that appellant did not expressly waive her right to counsel. Or in other words, this is not the situation where a defendant is asserting that she wants to represent herself and the trial court is charged with the task of determining whether that waiver is a valid waiver. Rather, here the court found an inferred waiver of counsel by appellant's own actions even though appellant

consistently indicated that she did not want to proceed *pro se*. The basis of the trial court's decision to find that appellant did waive her right to counsel was she had two competent attorneys but fired them both, the second one she fired a month before trial and was unable to find an attorney willing to take the case, and that her actions amounted to delay tactics.

{¶18} Although case law on inferred waiver is not abundant, our court has dealt with the issue. *State v. Hayes*, 7th Dist. No. 98CA130, 2001 WL 1262455. In *Hayes*, we explained that in determining whether an inferred waiver of counsel is valid, a reviewing court must look at the totality of the circumstances of each case individually. *Id*. Things to consider are a defendant's knowledge of the criminal justice system, whether the defendant indicates that she wants to proceed unrepresented by defense counsel, whether the defendant understands the nature of the charges, the possible punishment if found guilty, and possible defenses to the charges. *Id*. The totality of the circumstances must be considered even when the defendant is seemingly engaging in delay tactics, because when a defendant is employing such tactics it may be due to a failure to understand the crucial role of counsel in a criminal case. *Id*.

{¶19} In weighing the factors, the discussions that took place at the August 30, 2012 and September 6, 2012 pretrials and the September 26, 2012 trial date must be examined. At the August 30, 2012 pretrial hearing, appellant's retained counsel indicated that there was a question as to whether appellant wanted to keep him as her attorney. This attorney was appellant's second and he had been representing her for about 4 or 5 months. This pretrial hearing was being held to address appellant's motion to dismiss based on arraignment deficiencies and motion to modify bond. 8/30/12 Tr. 4. Appellant wanted the motion to dismiss to include as one basis the sufficiency of the evidence against her; she wanted to have her father, the alleged victim, testify as to what occurred. At that hearing, appellant indicated that if counsel did not support what she would like to do with the motion to dismiss that she would be seeking new counsel. 08/30/12 Tr. 7.

**{¶20}** The transcript shows a breakdown in the attorney client relationship. Appellant claimed that she did not get the time to discuss strategy for the motion to dismiss hearing with counsel and counsel claimed that they had previously discussed and had weekly discussion of the case progress. At the end of the hearing appellant indicated that she was going to retain new counsel and that she wanted a continuance on the motion to dismiss. 8/30/12 Tr. 16. Her motion to continue the pretrial hearing was granted and she was given the option of either having the hearing on September 6, 2012 or September 20, 2012. She chose September 6 and was instructed to notify the court of new counsel by September 5. The court also instructed her to inform new counsel that trial would be September 26, 2012. 08/30/12 Tr. 20-21. The court indicated it would not continue the trial. 08/30/12 Tr. 17.

**{¶21}** Although appellant was unable to find counsel, the continued pretrial went forward on September 6, 2012. The transcript of this hearing indicates that shadow counsel was appointed to appellant during the six day period of August 30, 2012 through September 6, 2012. Appellant indicated that the Friday before the September 6 hearing she learned that shadow counsel was assigned. She asked the court what shadow counsel's role would be. 09/06/12 Tr. 3. She was informed that it was to make "sure you don't make any glaring mistakes. * * * He doesn't specifically represent you. He is here to help." 09/06/12 Tr. 3-4. Appellant appeared to agree with this situation but asked for a continuance of the pretrial hearing. 09/06/12 Tr. 4. She indicated that the jury trial date could stay the same, however, she wanted another pretrial hearing. The trial court indicated it would not grant a continuance and that the trial date would not be continued. Appellant made statements throughout the proceedings that she did not want to delay the trial and that she did not want to proceed *pro se*. 09/06/12 Tr. 4-5, 31. The trial court once again reiterated that the trial date would stay the same and that there would not be another pretrial hearing.

**{¶22}** Within two weeks of the trial date, appellant filed numerous motions with the trial court - motion for discovery, jury demand, motion to extend time to make

pretrial motions, motion to dismiss based on speedy trial violations, and motion to reconsider the prior order denying her motion to dismiss. 09/09/12 Motions; 09/25/12 Motion. In none of these motions did she ask for a continuance of the trial date.

{¶23} The case then proceeded to trial, and since appellant was still unable to find counsel to represent her, she moved for a continuance of the trial. She indicated that she was not able to find counsel in Youngstown that was willing to try the case on such short notice. 09/26/12 Tr. 4. She once again stated that she did not want to proceed *pro se*. The record discloses that shadow counsel was at trial and was there to assist her. Before proceeding to trial, appellant asked who would represent her. The court stated that by her actions she elected not to be represented, that she was warned by the court and it anticipated her action and that was why the court appointed her shadow counsel. 09/26/12 Tr. 40.

{¶24} As can be seen, her statements throughout the proceedings indicated that she did not want to proceed *pro se*. Those statements do not lend to a finding that counsel was waived. That said, we must also consider other statements she made and her knowledge of the criminal justice system in determining whether despite her statements she did not want to proceed *pro se* that there still was an inferred waiver.

{¶25} The record discloses that appellant has training in the law. She acknowledged to the municipal court and to this court that she is an attorney. Thus, she has attended law school, graduated and passed a bar. Furthermore, the record also indicates that she was a court administrator for Youngstown Municipal Court and has worked for the FBI. The arguments presented to the trial court in motions to dismiss based on speedy trial violations and arraignment deficiencies display a fundamental understanding of the criminal process. That is not to say that her arguments evince that she understands the intricacies of criminal law. Rather her training and her arguments show that she understands the pitfalls of proceeding *pro se*.

{¶26} When that knowledge is taken in conjunction with other statements and actions she made during the proceedings, there is evidence to support an inferred

waiver. The transcripts of the August 30, 2012 and September 6, 2012 pretrial hearings indicate that appellant was attempting to control strategy. Strategy is typically governed by the attorney, not the client. She specifically stated that she did not get to discuss the strategy of the pretrial hearing with counsel before that hearing. 08/30/12 Tr. 15. Counsel disputed that allegation and contended that they had been discussing strategy from the beginning. 08/30/12 Tr. 15. The above discussion of this hearing shows that in addition to arguing for dismissal based on the errors in the arraignment, appellant wanted counsel to argue the sufficiency of the case. This strategy would be futile. In Ohio, the sufficiency of the evidence can be tested at the close of the state's case and usually cannot be tested prior to trial; the criminal rules of procedure do not contain an equivalent to the Ohio civil summary judgment rule:

> In criminal matters, a motion to dismiss can only raise matters that are "capable of determination without a trial of the general issue." Crim.R. 12(B); *State v. O'Neal* (1996), 114 Ohio App.3d 335, 336, 683 N.E.2d 105. Thus, in the criminal context, a motion to dismiss "tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant." *State v. Patterson* (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165. If the allegations contained in the indictment constitute offenses under Ohio criminal law, it is premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges, and thus, a motion to dismiss must be denied. Consequently, a pretrial motion, such as a motion to dismiss, must not entail a determination of the sufficiency of the evidence to support the indictment because such a determination cannot properly be made until, at the earliest, the conclusion of the state's case in chief and pursuant to a Crim.R. 29(A) motion. *State v. Abercrombie* (May 20, 2002), 12th Dist. No. CA2001–06–057, 2002 Ohio App. LEXIS 2408 at * 9, 2002 WL 1009316.

*State v. Kolat,* 11th Dist. Lake No.2001–L–117, 2002–Ohio–4699, ¶ 16.

**{¶27}** Thus, her counsel's strategy to not pursue sufficiency of the evidence during the motion to dismiss was a valid strategy.

**{¶28}** The above is not the only showing on the record that appellant was attempting to dictate trial strategy. The prosecutor indicated that the reason she did not have an attorney was her own fault. 09/26/12 Tr. 9. He elucidated:

> Very briefly, Your Honor, with respect to counsel, before we went on the record Miss Lawson indicated she had spent a significant amount of money to retain Attorney Jones' services. She has demonstrated to this Court her ability to obtain counsel. Another noteworthy thing she just said was she has attempted to obtain counsel for the last month, however, she has been unable to secure counsel. Her inability to secure counsel is because attorneys don't want to advance the theories that she is trying to present to this court. That's why she had a falling out with Attorney Jones. That's why she terminated the relationship with him. She wanted to advance theories that he didn't think were legally viable. * * * The reason she does not have counsel today is due to her actions.
>
> * * * No attorney wants to advance frivolous theories. No attorney wants to subject themselves to the wrath of the Court or potentially malpractice or potentially being grieved by Miss Lawson as she wants them to do things that they know are not legally allowable. Her inability to have counsel today is her own fault. She can retain counsel. She has demonstrated that. She doesn't have counsel because of her own fault. If we continue this matter, we are going to be in the same predicament. * * * If we continue this matter to give her more time to retain counsel, we are going to be back at square one in a month or two from now because that attorney as he gets enthralled in this case isn't going to introduce or entertain the notion that she wants to entertain. They are going to have another falling out and we are going to be at square one.

09/26/12 Tr. 8-9, 21-22.

{¶29} In addition to the above, there are two other facts that are important to our finding that the trial court did not commit error in finding an inferred waiver. The first is that she was appointed shadow counsel for the September 6, 2012 pretrial hearing, was advised of his role at that hearing and that shadow counsel was also present during the trial. The second is that she did not expressly request a continuance of the trial date until the day of trial. She did ask for pretrial continuances and to extend the time to file pretrial motions, however, there was not a clear express request for a trial continuance. Rather, the record reflects that given the delays she wanted to go to trial as soon as possible, which meant not continuing the September 26, 2012 trial date.

{¶30} Consequently, considering the unique facts of this case, when weighing the totality of the circumstances we find that the trial court did not err in finding an inferred waiver. This assignment of error lacks merit.

Second Assignment of Error

{¶31} "The arraigning court abused its discretion by circumventing the speedy trial provisions contained in O.R.C. 2945.71 and the Federal and State Constitutions where it ordered a competency evaluation upon no basis and after recusal of the local court making it necessary to request a visiting judge."

{¶32} Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King,* 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994); *see also* Sixth Amendment, United States Constitution; Section 10, Article I, Ohio Constitution. The Sixth Amendment of the U.S. Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy [trial]." This fundamental right has been codified by the General Assembly as R.C. 2945.71 to 2945.73. The Ohio Supreme Court has held the statutory speedy-trial provisions set forth in R.C. 2945.71 to be coextensive with constitutional speedy-trial provisions. *State v. O'Brien,* 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987).

**{¶33}** The standard of review that appellate courts apply to speedy trial issues is to count days as set forth in R.C. 2945.71. *State v. Stevens,* 8th Dist. No. 87693, 2006–Ohio–5914.

**{¶34}** Appellant was charged with first-degree misdemeanors. Therefore, she was required to be brought to trial 90 days after her arrest. R.C. 2945.71(B)(2). Appellant was arrested on March 29, 2012 and her trial occurred on September 26, 2012. Clearly the 90 day time frame had elapsed.

**{¶35}** However, the time to be brought to trial may be extended pursuant to R.C. 2945.72. The relevant reasons provided in this statute are for a competency evaluation, for a motion attributable to the accused and for a continuance attributable to the accused. R.C. 2945.72(B), (E), (H).

**{¶36}** Appellant was arrested on March 29, 2012. We do not count the day of arrest when computing speedy trial time. *State v. McCall,* 152 Ohio App.3d 377, 2003–Ohio–1603, 787 N.E.2d 1241, ¶ 10 (7th Dist.). On March 30, 2012 a competency evaluation was ordered. That tolled the time until its completion. That competency evaluation was not resolved until June 29, 2012. The reason it took so long was because appellant would not comply with the court order and was even sent to jail for contempt for failing to comply with the court ordered competency evaluation.

**{¶37}** In the supplemental authority, Lawson argues that the trial court continued the trial for three months until September 26, 2012 because the visiting judge was unavailable. She complains that this time should not be tolled against her because it was an unreasonable length of time. We do not need to decide the merit of that position because the record shows that during that time she filed multiple motions that tolled the speedy trial time.

**{¶38}** On July 19, 2012, appellant filed a motion to amend the bond. This tolls the speedy trial time. On August 29, 2012 a motion to dismiss was filed. On August 30, 2012 a hearing on the motion to dismiss was held and during that hearing the court denied the July 19, 2012 motion to amend bond. 08/30/12 Tr. 14. However, the matter was continued until September 6, 2012, to resume arguments on the

motion to dismiss because appellant fired her attorney. At the September 6, 2012 hearing, the trial court denied the motion to dismiss. 09/06/12 Tr. 29. Time began to run on that date.

**{¶39}** On September 19, 2012, appellant then filed a motion to dismiss based on speedy trial violations. This motion tolled the time. Thus, from September 6 to September 19 is 13 days. Trial began on September 26 and immediately prior to trial, the court denied the motion to dismiss based on speedy trial violations.

**{¶40}** Therefore, roughly 34 days of the 90 days had been used; from June 29, the date that the trial court continued the case, to July 19, the first date of her motions tolling the time, is 21 days, and the time did not start running again until September 6 and then was tolled because of her motions on September 1, 13 days.

**{¶41}** Appellant acknowledges the rule that competency evaluations and motions extend the time to try a case. However, she maintains that the time from the ordering of the competency evaluation until its completion should not extend the time to try her for two reasons. First, she contends that the trial court lacked authority to order the competency evaluation, and thus, the order is void and provides no basis for tolling the speedy trial time. Second, she contends that the competency evaluation was not needed and thus, the trial court abused its discretion when it ordered the evaluation.

Did the trial court have authority<br>to order a competency evaluation?

**{¶42}** Appellant was arraigned on March 30, 2012. At the arraignment, the trial court entered a not guilty plea, appointed her counsel, set bond and entered a no contact order with the victim. 03/30/12 Tr. 5-7. At the end of the hearing, Judge Milich recused himself from the case. 03/30/12 Tr. 7. He did not order a competency evaluation from the bench. Following the hearing, the court issued a judgment entry that memorialized what occurred during the hearing.

**{¶43}** Appellant claims that since the court recused itself, it had no authority to order the competency evaluation. Thus, according to her the competency order is void. She then takes her position one step further and claims that since a void

judgment has no legal force or effect, the competency order could not toll the speedy trial time.

**{¶44}** Appellant cites us to an Eleventh Appellate District decision in support of her position that the arraigning judge had no authority to order a competency exam because he had recused himself. *In re B.D.*, 11th Dist. Nos. 2009-L-003, 2009-L-007, 2009-Ohio-2299.

**{¶45}** In *In re B.D.* a magistrate issued its decision on December 5, 2008. The trial court then issued an interim order adopting the magistrate's decision. However, that order was not signed by the judge assigned to the matter, but rather was signed by a judge who had recused himself from the case on June 6, 2007, six months earlier. *Id.* The appellate court found that the order signed by the recused judge was void because that judge had no authority to act over the matter after his recusal. *Id.* at ¶ 76.

**{¶46}** This is not the situation before us; this is not the situation where a judge recuses himself and then days or months later issues an order. Judge Milich ordered the competency evaluation and recused himself on March 30, 2013. Furthermore, he did it in the same judgment entry. Courts speak through their judgment entries. Thus, Judge Milich had the authority to order the competency evaluation.

**{¶47}** Even if we were to find that Judge Milich had no authority to order the competency evaluation, appellant's argument that she was denied a speedy trial still fails. An April 13, 2012 judgment entry signed by the visiting judge ordered a competency evaluation. From March 30, 2012 to April 13, 2012 is 13 days. Adding that to the amount previously determined to have elapsed only brings her up to 45 days. Therefore, for those reasons her first argument fails.

<u>Did the trial court abuse its discretion</u>
<u>in ordering the competency evaluation?</u>

**{¶48}** Her second argument as to why the time between ordering the competency evaluation and for it to be resolved should not count is based on her position that the trial court abused its discretion when it ordered the evaluation.

**{¶49}** The Eighth Appellate District, when reviewing an argument that the trial court improperly sua sponte ordered a competency evaluation, did so using an abuse of discretion standard of review. *State v. Saddler*, 8th Dist. No. 71747, 1998 WL 183865. However, the Eighth Appellate District did not find an abuse of discretion in that case.

**{¶50}** In reviewing the arraignment transcript it is understandable why the trial court ordered the competency evaluation. The transcript is only 7 pages long. It starts with the arraignment judge asking appellant if she got a copy of the complaint. 03/30/12 Tr. 3. She answers no and the court then asks if she wants it read to her. 03/30/12 Tr. 3. She responds "sure." The court then reads the first charge and asks her if she understands it. 03/30/13 Tr. 3-4. Appellant states, "None of that is true." 03/30/12 Tr. 4. The court then reads the second charge and asks her if she understands it. 03/30/12 Tr. 4. She states, "I don't understand that at all." 03/30/12 Tr. 4. She does not indicate that none of that allegation is true, rather she states she does not understand it. The court then enters a not guilty plea and asks her, "Are you able to afford your own lawyer?" 03/30/12 Tr. 5. She responded, "I don't know what that means." 03/30/12 Tr. 5. This transcript also reveals that appellant is a lawyer, previously was a court administrator for the Youngstown Municipal Court, and was currently suing the City of Youngstown and the Municipal Court. 03/30/12 Tr. 5-7. Given those facts and her responses that she did not understand the charges and did not know what it means to be able to afford an attorney, we hold that the trial court did not abuse its discretion in ordering a competency evaluation. This second argument lacks merit.

**{¶51}** Since the order of the competency evaluation was permitted that period of time tolled the speedy trial time. Therefore, for the above reasons, this assignment of error is meritless.

Third Assignment of Error

**{¶52}** "The defendant-appellant was denied her due process rights and her right to counsel at the time of her arraignment as the court failed to comply with

Criminal Rule 10 and 43 in as much as the provisions of said rule requires a right to have a meaningful and confidential dialoge [sic] with counsel."

{¶53} Under this assignment of error, appellant argues that the trial court appointed her counsel at her arraignment, Attorney Kivlighan, but failed to comply with Crim.R. 10 and 43(A)(2) by not allowing her to communicate privately with counsel.

{¶54} Here, appellant was arraigned by video. This is permitted as long as there is compliance with Ohio Criminal Rule 10 and 43. Pursuant to Ohio Criminal Rule 10 appellant was required to be advised of her right to obtain counsel to represent her at the arraignment stage and that she was permitted a reasonable continuance in order to secure counsel. Crim.R. 10(B)(2), (C)(1)-(2). Ohio Criminal Rule 43 states that the court must allow for private communication between the defendant and counsel. Crim.R. 43(A)(2)(d).

{¶55} Here, appellant is not disputing that she was advised of these rights. Rather, she is arguing that she was not permitted to communicate privately with her appointed counsel.

{¶56} Her argument is based on a false statement of fact. The trial court did not appoint counsel to represent her at the arraignment. The trial court, after entering a not guilty plea on her behalf, assigned counsel for future proceedings. Thus, appellant was not represented at the arraignment. Therefore, the trial court did not deny her the ability to communicate privately with her counsel.

{¶57} Furthermore, there was no requirement that appellant had to be appointed counsel for the arraignment. Crim.R. 44 is the rule on assignment of counsel. Provision (A) addresses serious offenses and states that a defendant charged with a serious offense who is unable to obtain counsel shall be assigned counsel to represent her at every stage of the proceedings from initial appearance through appeal. Provision (B) addresses petty offenses. This rule does not contain the language that counsel must be appointed for every stage of the proceedings. Pursuant to Ohio Criminal Rule 2, a petty offense is "a misdemeanor other than a serious offense." Crim.R. 2(D). A serious offense is "any felony, and any

misdemeanor" that "includes confinement for more than six months." Crim.R. 2(C). Both charges, domestic violence and intimidation, are first-degree misdemeanors and the maximum penalty for each is 180 days. R.C. 2929.24(A)(1). Therefore, the charges against appellant are petty offenses since the maximum penalty for each misdemeanor is not more than six months incarceration. *State v. Guerriero*, 7th Dist. No. 12MA48, 2012-Ohio-5990, ¶ 12. Consequently, she was not entitled to appointed counsel at the arraignment. This assignment of error lacks merit.

<u>Fourth Assignment of Error</u>

**{¶58}** "The defendant-appellant's conviction is against the manifest weight of the evidence weight of evidence [sic]."

**{¶59}** Appellant argues that the domestic violence conviction is against the manifest weight of the evidence. In a subsequent filing appellate counsel asked this court to also address whether the intimidation conviction is against the manifest weight of the evidence. We granted such request.

**{¶60}** A challenge to the manifest weight of the evidence addresses not the mere existence of evidence on each element, but the effect of that evidence in inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). To evaluate the manifest weight of the evidence, an appellate court reviews the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other * * * the party having the burden of proof will be entitled to their verdict, if [the jury], on weighing the evidence in their minds, * * * shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics * * *.'" *Thompkins* at 387. Although the reviewing court is sometimes described as "the thirteenth juror" when conducting this review; the weight to be given

the evidence and the credibility of the witnesses are still primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

### 1. Domestic Violence

**{¶61}** Domestic violence, as defined in R.C. 2919.25(A), prohibits any person from knowingly causing or attempting to cause physical harm to a family or household member. "Physical harm" or "physical harm to persons" is defined as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶62}** It is undisputed that the alleged victim, Mr. June Lawson, is a family and household member. In arguing that the verdict is against the manifest weight of the evidence, appellant focuses on Mr. Lawson's testimony and concludes that his testimony does not show that appellant caused or attempted to cause him physical harm.

**{¶63}** At trial, Mr. Lawson testified that he is appellant's father; he is 77 years old and has been 80% blind in his left eye for the past 12 years. 09/26/12 Tr. 239-240, 249. He testified that there was no physical contact between him and appellant that night. 09/26/12 Tr. 245. However, he then stated that she pushed him to get his attention, but did not beat him up. 09/26/12 Tr. 245. He further indicated that appellant did not cuss at him or threaten him that night. 09/26/12 Tr. 247.

**{¶64}** During his testimony, the recordings of the two 911 calls he made were played. After listening to the tapes he admitted that he said, "My daughter is not doing well mentally." 09/27/12 Tr. 251. He also admitted that it was appellant's voice calling him a bastard and asking him who he was calling. 09/27/12 Tr. 252-254. He then acknowledged that in the background of the first recording appellant is heard yelling at him. 09/27/12 Tr. 255.

**{¶65}** Mr. Lawson concluded his testimony on direct examination by indicating that he does not want appellant prosecuted for the offenses. 09/27/12 Tr. 261.

**{¶66}** The victim's testimony was not the only testimony regarding physical contact that occurred between appellant and the victim. Officer Eggleston from the

Youngstown Police Department testified that he talked to the victim upon arriving at the residence and was told by the victim that appellant hit him in the back of the head, and in the shoulder and neck. 09/26/12 Tr. 291-292. The officer then spoke to appellant and she admitted to the officer that she hit her father in the head because he was getting on her nerves. 09/26/12 Tr. 292. He further testified that appellant was yelling the entire time the officers were there. 09/26/12 Tr. 293. He then testified that based upon what appellant had said, what the victim had told them, and what they saw, appellant was arrested. 09/26/12 Tr. 294.

{¶67} Officer Perkins from Youngstown Police Department also testified. He avowed that upon arriving at the scene the victim told him that appellant was out of control and that he could not handle her. 09/26/12 Tr. 324. He stated that appellant was screaming at her father the entire time he was there. 09/26/12 Tr. 325. He testified that he witnessed appellant lunge at the victim and punch him in his face. 09/26/12 Tr. 325.

{¶68} If the officers' testimony is believed, it supports a finding of domestic violence because there was either physical harm or an attempt to cause physical harm. Punching a 77 year old man who is 80% blind in one eye in the face and head is logically going to cause some type of injury, illness, or other physiological impairment or at the least is an attempt to cause injury, illness or other physiological impairment. The definition of physical harm as used above indicates that the gravity or duration of the physical harm is irrelevant.

{¶69} Admittedly, there are some discrepancies between Officers Eggleston and Perkins' testimony; the officers version of events concerning where each person was located when they arrived was different. However, both testified about appellant's demeanor that night, specifically that she was screaming at her father.

{¶70} Considering all the evidence presented, there is a credibility question; Officers Eggleston and Perkins' version of events that show causing or attempting to cause physical harm or Mr. Lawson's version of events that there was no physical harm. Credibility of the witnesses is best left to the trier of fact as it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). An appellate court will not substitute its judgment for that of the trier of fact if there is competent and credible evidence to support the conviction. *State v. Trembly*, 137 Ohio App.3d 134, 141-142, 738 N.E.2d 93 (8th Dist.2000). Reversal based upon the manifest weight of the evidence should occur "only in the exceptional case in which the evidence weighs heavily against conviction." *Thompkins,* 78 Ohio St.3d at 387, citing *Martin,* 20 Ohio App.3d at 175. As such, we defer to the jury's conclusion. Accordingly, the domestic violence verdict was not against the manifest weight of the evidence.

## 2. Intimidation

**{¶71}** Intimidation of a victim as defined by R.C. 2921.04(B) provides:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

(1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding.

**{¶72}** Mr. Lawson testified at trial that appellant did not curse at him or threaten him that night and that he did not want her prosecuted for the incident. 09/26/12 Tr. 247, 261. However, the recording of the telephone call to 911 provides evidence that appellant was yelling at the victim. Furthermore, both officers indicated that appellant did threaten Mr. Lawson. Officer Eggleston testified that when they were taking appellant to the cruiser, she yelled to the victim that she was going to kick his "ass" when she got out of jail. 09/26/12 Tr. 295. Officer Perkins stated that upon her arrest, appellant threatened to kick the victim's "butt." 09/26/12 Tr. 326.

**{¶73}** As with the domestic violence, the above testimony creates a credibility question. As stated above, we will not substitute our judgment for that of the trier of fact as long as there is competent credible evidence to support the conviction. *Trembly*, 137 Ohio App.3d at 141-142. The officers' testimony provides competent

credible evidence. Accordingly, there is no basis to find that the intimidation verdict was against the manifest weight of the evidence.

**{¶74}** In conclusion, both arguments raised under this assignment of error lack merit. This assignment of error is meritless.

### Fifth Assignment of Error

**{¶75}** "The court erred in failing to grant the defendant-appellant's rule 29 motion for acquittal."

**{¶76}** At the end of the state's case in chief, appellant moved for a Crim.R. 29 motion for acquittal. 09/26/12 Tr. 346. The trial court denied the motion. 09/26/12 Tr. 346.

**{¶77}** An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard it uses to review a sufficiency of the evidence claim. *State v. Rhodes,* 7th Dist. No. 99BA62, 2002–Ohio–1572, at ¶ 9; *State v. Carter,* 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *Thompkins,* 78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

**{¶78}** As explained above, the officers' testimony, viewed in the light most favorable to the prosecution, meaning if it is believed, established that appellant caused or attempted to cause physical harm to Mr. June Lawson. This evidence establishes the essential elements of domestic violence. Furthermore, the officers' testimony, referenced above, also establishes the essential elements of intimidation; they testified that appellant threatened to kick the victim's "ass" when she gets out of jail. Therefore, there is sufficient to sustain the jury's verdicts. This assignment of error lacks merit.

### Conclusion

**{¶79}** For the foregoing reasons, all assignments of error lack merit.  The judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.