[Cite as *State v. Rodriquez*, 2019-Ohio-3278.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :
                               No. 107720

    v.                                     :

ANGEL RODRIQUEZ                          :
(a.k.a. ANGEL RODRIGUEZ),

                                 :

    Defendant-Appellant.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-17-618219-A, CR-17-621652-G,
CR-17-622198-B, and CR-17-624182-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew F. Rogalski, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Noelle A. Powell and Jeffrey Gamso, Assistant Public Defenders, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1}   Defendant-appellant, Angel Rodriquez, appeals his sentence and claims the following two errors:

1. Angel Rodriquez was denied his rights to a fair trial and due process guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 10 and 16 of the Ohio Constitution when he was sentenced by a judge who had become personally involved and could no longer act without bias or prejudice.

2. Angel Rodriquez was denied his rights to a fair trial and due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitutions and by Article I, Sections 10 and 16 of the Ohio Constitution when the judge imposed his sentence based on improper considerations.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Rodriquez was charged with several offenses in four separate indictments; Cuyahoga C.P. No. CR-17-618219-A, Cuyahoga C.P. No. CR-17-621652-G, Cuyahoga C.P. No. CR-17-622198-B, and Cuyahoga C.P. No. CR-17-624182-A. Pursuant to a plea agreement, Rodriquez pleaded guilty to one count of felonious assault with a three-year firearm specification in C.P. No. CR-17-618219-A; one count of participating in a criminal gang with a three-year firearm specification, one count of felonious assault with a three-year firearm specification, and one count of aggravated menacing in C.P. No. CR-17-621652-G; one count of receiving stolen property and one count of having weapons while under disability in C.P. No. CR-17-622198-B; and one count of felonious assault with a three-year firearm specification in C.P. No. CR-17-624182-A. The plea agreement included an agreed sentencing range of 12 to 18 years for all four cases, and the trial court agreed to be bound by it.

{¶ 4} The factual basis for Rodriquez's guilty pleas were discussed at length at the plea and sentencing hearings. In C.P. No. CR-17-618219-A, the indictment

alleged that in May 2017, Rodriquez shot a woman, who was a friend of the mother of Rodriquez's baby. The friend, C.R., had been waiting in a car outside Rodriquez's house while the mother was inside picking up the baby when Rodriquez and the mother exited the home in the midst of an argument. The argument turned physically violent, and Rodriquez shot C.R. as she was running away. (Tr. 17, 94.)

{¶ 5} In C.P. No. CR-17-624182-A, the indictment alleged that in July 2017, Rodriquez fired several gunshots into a van occupied by four young teenagers and two adult chaperones, who were on their way to the beach. (Tr. 96.) The van happened to stop at an intersection outside Rodriquez's house, and Rodriquez "thought they looked at him in the wrong way." (Tr. 96.) Photographs of the bullet holes in the van were introduced at sentencing. (Tr. 96.) Fortunately, no one was physically injured, and all six victims independently identified Rodriquez as the shooter in photo lineups.

{¶ 6} In C.P. No. CR-17-621652-G, the indictment alleged that Rodriquez shot and seriously injured a rival rap artist's teenage brother as he was leaving school at the end of the day. (Tr. 93.) After the shooting, Rodriquez warned the victim, who had been shot in the leg, that "next time I won't miss." (Tr. 93.) The indictment also alleged that Rodriquez participated in a criminal gang while committing the offense.

{¶ 7} Finally, in October 2017, Rodriquez was arrested in possession of a stolen firearm. (Tr. 92.) Rodriquez was subsequently charged with, and pleaded

guilty to, having a weapon while under disability and receiving stolen property in C.P. No. CR-17-622198-B.

{¶ 8} Two detectives from the Cleveland Police Department discussed Rodriquez's history of gang activity at the sentencing hearing. According to the detectives, Rodriquez was an active participant in the Westside Mafia subset of the Heartless Felons criminal gang. Detective Beveridge explained that he has known Rodriquez as an aspiring rap artist for years and tried to protect him from being killed as was the case with several of his rapper friends. Detective Beveridge spoke with Rodriquez's mother and with Rodriquez himself, but "obviously it didn't work." (Tr. 86.) The trial court judge thanked the detective for his efforts and acknowledged having seen her own picture posted on one of Rodriquez's social media accounts. (Tr. 85.)

{¶ 9} The state introduced videos and photographs of Rodriquez and other known gang members, brandishing operable firearms, flashing known gang signs, and wearing gang clothing. (Tr. 90-92.) The state also introduced a recording of a phone call Rodriquez made from the jail to a friend, who called C.R. on a three-way line. In the recording, which was played for the court at sentencing, the court could hear Rodriquez asking C.R. to file an affidavit recanting the statements she made to police and to the prosecutor's office. Rodriquez asked her to tell the police that she had lied about being shot by him. (Tr. 107-110.)

{¶ 10} At the plea hearing, the parties and the court discussed the potential maximum prison terms Rodriquez could receive if there were no agreement on

sentencing. For example, in C.P. No. CR-17-624182-A, Rodriquez was charged with a total of ten counts, including six counts of felonious assault with a deadly weapon with a three-year firearm specification attendant to each count. The prosecutor explained that none of the charges were subject to merger because they were committed against six different victims. (Tr. 21.) According to the prosecutor, Rodriquez faced a potential sentence of 66 years on that case alone. (Tr. 22.)

{¶ 11} The prosecutor further explained that Rodriquez faced a potential sentence of 48 ½ years on the counts offered in the plea agreement in the absence of a sentencing agreement. (Tr. 23.) The court advised Rodriquez that without a plea agreement and agreed sentencing range, he "could face 70-plus years in the penitentiary based on consecutive sentences if the court were to consider that even on two cases, for example." (Tr. 48.) However, the court agreed to be bound by the recommended sentencing range and explained, in relevant part:

> What everybody has worked towards is a resolution that would bring your sentencing range into something that I would be willing to follow, which is anywhere from 10 to 20 if that is what you were going to agree to, or 12 to 18, which is what, you know, if you're looking at the range that may be the one that would be better. Because I could only sentence you to a maximum of 18 years if you were to accept that responsibility.

(Tr. 24-25.)

{¶ 12} At the sentencing hearing, the court indicated that it reviewed a presentence investigation report and a mitigation of sentence report. Defense counsel and members of Rodriquez's family argued for leniency within the sentencing range. On the advice of his stepfather, Rodriquez read a statement to the

court that challenged the court's jurisdiction and indicated that he was a Freemason. The statement was offensive to the court, and the court asked Rodriquez if he understood the statement. Rodriquez replied that he did not. (Tr. 118.) On further questioning, Rodriquez explained: "I don't understand it. He just told me to read it. I was going to put it on the record." After conferring with his lawyer, Rodriquez opted to introduce the statement as an exhibit rather than as an oral statement on the record. (Tr. 122-123.)

{¶ 13} After considering all the statements and reports, the court sentenced Rodriquez to an aggregate 18-year prison term. Twelve of the 18 years were composed of four firearm specifications run consecutively, to be served prior and consecutive to six years on the underlying offenses. After pronouncing the sentence, the court concluded with the following remarks:

> Shooting at six innocent people in a car is the most reckless behavior that I have heard of in a long time. Shooting at a woman who is with the mother of your children while the mother of your children is running out with your child in her arms is not forgivable. You are doing things that are so incredibly reckless and dangerous. I am glad that I can protect the public at this point.

(Tr. 127.) Rodriquez now appeals his 18-year sentence.

## II. Law and Analysis

### A. Bias

{¶ 14} In the first assignment of error, Rodriquez argues the trial judge was biased against him as a result of viewing photos of her posted on one of his social

media accounts. The judge also indicated that she viewed some of Rodriquez's rap videos on YouTube. Rodriquez contends the trial judge should have recused herself after her independent review of his videos and social media posts prejudiced her against him.

{¶ 15} Generally "[a] court of appeals has 'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *State v. Frazier*, 8th Dist. Cuyahoga No. 104264, 2017-Ohio-8307, ¶ 16, quoting *State v. Williamson*, 8th Dist. Cuyahoga No. 104294, 2016-Ohio-7053, ¶ 27. Nevertheless, proceedings before a biased judge are fundamentally unfair and denies a defendant due process of law. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48. Thus, a trial court judgment may be reversed due to bias if the bias or prejudice violated the defendant's right to due process and deprived the defendant of a fair proceeding. *Id.*

{¶ 16} In determining whether purported judicial bias resulted in an unlawful sentence, we presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and "'the appearance of bias or prejudice must be compelling in order to overcome the presumption.'" *State v. Eaddie*, 8th Dist. Cuyahoga No. 106019, 2018-Ohio-961, ¶ 18, quoting *State v. Filous*, 8th Dist. Cuyahoga No. 104287, 2016-Ohio-8312, ¶ 14.

{¶ 17} The Ohio Supreme Court has defined "judicial bias" as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the

litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *Dean* at ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 18} At the sentencing hearing, the prosecutor explained that a mother of one of the victims wished to offer a victim impact statement in her place because "she was very scared to appear in court." (Tr. 95.) The trial judge replied: "I'm sure. When your picture gets posted on social media for thousands to see, it can be relatively disconcerting." (Tr. 95.) Rodriquez argues the judge's response demonstrates she was afraid of and, therefore, biased against, Rodriquez.

{¶ 19} However, this is an isolated comment taken out of context. When the sentencing transcript is read in its entirety, it becomes clear that the judge was neither frightened nor biased against Rodriguez. Earlier in the sentencing hearing, the judge indicated she was disappointed with Rodriquez's decision to pursue gang activity after Detective Beveridge attempted to steer him away from the gang and toward more wholesome pursuits. In discussing the videos and photos on social media, the judge stated, in relevant part:

> I was disappointed because I also recall being part of Angel's social media post at one point, so I was informed my photograph was on Angel's social media and was posted. While, of course, I was informed about that from the prosecutor's office and from the detectives, I was able to observe Angel's videos, which I thought were interesting, but I also realized that he had the ability to use his talent for something perhaps better suited than what I find myself reading right now. So I was disappointed that he did not take your wise advice, detective.

(Tr. 86.)  These are not sharp-spoken words evidencing a bias against Rodriquez. Rather, they express a sense of regret for the consequences of the young man's bad judgment.

{¶ 20} Later, when the prosecutor explained that one of the victims was too frightened to appear in court to make a statement, the court replied with the statement, cited by Rodriguez, that it was "disconcerting" to find that Rodriguez had posted her picture on one of his social media accounts.  Although the statement initially sounds unrelated to the victim's fear, it seems the court was being empathetic toward the victim.  Indeed, Rodriguez had previously tried to persuade this victim to recant her statements to police.  And the prosecutor stated that one of the witnesses, who identified Rodriguez during the police investigation, "was not thrilled about cooperating with police" and "was very reluctant to identify" him.  (Tr. 93.)

{¶ 21}  Rodriguez apparently used intimidation in an attempt to change the outcome of the criminal proceedings, and posting the judge's picture on his social media account may have been another example of that strategy. But there is nothing in the record that would support a finding that the judge was intimidated, frightened, or biased, nor is there anything to suggest that the 18-year sentence was the product of unfairness.

{¶ 22} Therefore, the first assignment of error is overruled.

### B.  Jointly Recommended Sentence

{¶ 23} In the second assignment of error, Rodriquez argues the trial judge imposed the maximum sentence within the recommended sentencing range because she was swayed by "improper considerations." He contends the judge punished him for reading a statement, written by his stepfather, which challenged the court's jurisdiction.

{¶ 24} Our review of agreed sentences is limited by R.C. 2953.08(D)(1), which states:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

In other words, "if a jointly recommended sentence imposed by a court is 'authorized by law,' then the sentence 'is not subject to review.'" *State v. Sergent*, 148 Ohio St. 3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 15.

{¶ 25} It is undisputed that the trial court sentenced Rodriquez to the maximum prison term provided in the sentencing agreement. "That appellant agreed to a sentencing range or sentencing cap, as opposed to a specific sentence, is immaterial." *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 23 (8th Dist.). Therefore, the only question for review is whether the 18-year consecutive sentence was authorized by law. A sentence is "authorized by law," and thus not reviewable on appeal "'if it comports with all mandatory sentencing provisions.'" *Sergent* at ¶ 26, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph two of the syllabus. However, in *Sergent*, the Ohio Supreme Court

held that, in the context of a jointly recommended sentence that includes nonmandatory consecutive sentences, a trial court is not required to make the findings set forth in R.C. 2929.14(C)(4). *Sergent* at ¶ 43.

{¶ 26} Rodriquez does not argue that his sentence is contrary to law or that any of his individual sentences are not authorized by law. As previously stated, he argues the trial court imposed the maximum sentence provided within the agreed sentencing range because Rodriquez made an offensive statement to the court challenging its jurisdiction. However, the court's motivations are not subject to review. R.C. 2953.08(D)(1).

{¶ 27} In fashioning Rodriquez's 18-year sentence, the court ordered Rodriquez to serve four of the three-year firearm specifications consecutively for a total of 12 years, to be served prior and consecutive to six years on the underlying charges, including participating in criminal gang and felonious assault, both of which are second-degree felonies. Nothing prohibited the court from requiring Rodriquez to serve four consecutive three-year terms on firearm specifications. And R.C. 2929.14(A), which governs basic prison terms, provides that the prison term for a second-degree felony shall be "a definite term of two, three, four, five, six, seven, or eight years." R.C. 2929.14(A)(2)(b). Therefore, the six-year prison terms on the underlying charges were within the statutory range for second-degree felonies. Rodriquez knowingly agreed to the 18-year sentence, which was authorized by law.

{¶ 28} Therefore, the second assignment of error is overruled.

**{¶ 29}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
MICHELLE J. SHEEHAN, J., CONCUR