[Cite as *State v. Jordan*, 2022-Ohio-2033.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 21AP-421 (C.P.C. No. 20CR-295) |
| v. | : | No. 21AP-422 (C.P.C. No. 19CR-4208) |
| Vincent C. Jordan, | : | |
| | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 16, 2022

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Marcus M. Van Wey, LLC*, and *Marcus M. Van Wey*, for appellant.

APPEALS from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Vincent C. Jordan, appeals from the judgments of conviction and sentence entered by the Franklin County Court of Common Pleas.

{¶ 2} For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} On August 26, 2019, appellant was indicted in Franklin C.P. No. 19CR-4208 on one count of burglary in violation of R.C. 2911.12, a felony of the second degree (Count One) and one count of possession of criminal tools in violation of R.C. 2923.24, a felony of the fifth degree (Count Two). On January 17, 2020, appellant was indicted in Franklin C.P. No. 20CR-295 on a single count of burglary in violation of R.C. 2911.12, a felony of the

second degree. Appellant was determined to be indigent and private counsel was appointed to represent him in these cases. The cases were joined into a single action for purposes of trial on February 28, 2020.

{¶ 4} On July 2, 2020, appellant appeared before the trial court for a pretrial hearing. Appellant stated he was not happy with his representation based on the lack of communication. Appellant also requested that the bond be reduced in the case. The trial court inquired into counsel's communication with appellant. Counsel stated that he had discussed the case with his client on four occasions, including twice in the last month, provided discovery, and explained to appellant the delay in the case was due to the tolling order from the COVID-19 pandemic. Counsel even went as far as sending a copy of the Supreme Court's order to his client to substantiate his claim. Counsel noted he would be happy to continue in his representation of appellant but recognized the frustration with the time it has taken to resolve the case. When asked by the court if appellant would like to proceed to trial with his current counsel or have a delay associated with appointing new counsel, appellant did not answer the question and requested a change of venue. The trial court denied the request and set the matter for a hearing.[1]

{¶ 5} On July 15, 2020, the parties appeared before the trial court for a hearing in the instant case. The trial court first inquired into the status of the plea negotiations between the parties. Counsel for appellant stated that he had met with his client that week. According to counsel, appellant was open to a potential plea offer but rejected the current offers from appellee. Counsel stated, "[appellant was] okay with me continuing to represent him or at least -- maybe I should say this: He does not want to represent himself." (July 15, 2020 Tr. at 4.) Appellant stated he would like to proceed with trial and expressed his dissatisfaction with the current conditions of bond. The trial court rejected any requests to modify bond and advised appellant that the case would go to trial on September 8, 2020 if he continued with his current counsel. The trial court cautioned that if appellant wanted new counsel the case would likely be delayed to allow the new attorney time to prepare for trial. Appellant refused to answer the judge's question as to whether he would like to

---

[1] Throughout the pretrial hearing, appellant repeatedly interrupted the trial court as it attempted to work through his purported grievances. At the close of the hearing, appellant characterized the proceeding as "Fucking kangaroo-ass court. Fucking bullshit." (July 2, 2020 Tr. at 10.) In what can only be described as an exercise in judicial restraint, the trial court declined to respond.

proceed with his current attorney. Appellant stated, "You running the show. You make the call." *Id*. at 9. When asked if he would like to proceed with current counsel or represent himself, appellant responded, "It's your show." *Id*. at 10.

{¶ 6}  The case was set to proceed to trial on September 8, 2020. The trial court stated on the record that appellant was not present in the courtroom. According to counsel, appellant refused to appear for trial, and he was instructed by his client to seek a continuance and request a mental health examination. When counsel attempted to inquire into these requests during the meeting, appellant became increasingly "heated," and counsel was forced to terminate the meeting. (Sept. 8, 2020 Tr. at 3.) The trial court concluded that appellant's behavior was a stall tactic, but it did not feel comfortable at that time to proceed without appellant. The trial court cautioned that "if he continues to refuse to cooperate, that is something that I will look at, at that time if he's not here." *Id*. at 5. The case was rescheduled for trial at a later date.

{¶ 7}  On November 30, 2020, the parties again convened for a hearing in this matter. Appellant appeared in the courtroom with his attorney. Counsel for appellant informed the court that he had met with his client the prior week and discussed the plea options all of which were rejected. Appellant also asked the court for a reduction in bond, which appellee opposed on several grounds. The trial court denied the request for a change in bond. The trial court stated that it is setting the case for a trial and cautioned appellant that if he again refuses to come to court the trial will proceed without him. Appellant appears to have attempted to leave the courtroom at that time stating, "I'm done." (Nov. 30, 2020 Tr. at 6.) Appellant then remarked that his current counsel would not be his attorney for trial. The trial court asked if he wanted to represent himself at trial. Appellant did not respond to the question but made a series of inappropriate comments to the trial court before exiting the courtroom.

{¶ 8}  On July 27, 2021, this matter was set for trial. The record indicates that appellant refused to come out of his holding cell. The trial court held a hearing in the holding cell inquiring whether appellant wanted to go forward with trial. The trial court informed appellant it was prepared to proceed with trial or consider a plea at this time. Appellant stated that he refused to continue with his current attorney. The trial court asked

if appellant wanted to represent himself, which he replied, "[n]o. I want a chance to talk to another attorney." (July 27, 2021 at Tr. 4.)

{¶ 9} The trial court reconveyed the parties in the courtroom. When asked if appellant would like to represent himself at trial, he stated, "[n]o, I'm not." *Id.* at 11. Appellant claimed that his attorney had discussed his case with another inmate. Appellant then proceeded to interrupt the trial court's questions and disrupt the hearing. After several warnings from the trial court about his behavior, appellant asked to leave the courtroom, which the court permitted. Regarding appellant's claim that counsel had discussed his case with another inmate, counsel explained that appellant refused to meet with him and made a "big scene in the hallway at the jail." *Id.* at 14. Counsel indicated that another inmate asked about appellant's outburst. Counsel remarked that appellant was not "pleased with the representation and how the proceedings have gone." *Id.* at 14.

{¶ 10} The trial court then inquired into whether appellant should be maintained outside the courtroom during the trial. Counsel for appellant stated that it would hinder appellant's case if he was disruptive in the courtroom during the jury trial. Counsel concluded that it would be in his client's best interests watching and listening outside the courtroom. Appellee noted that appellant, on at least three occasions, had to leave the courtroom due to his behavior. Appellee posited that appellant's conduct was a tactic to delay the trial. The trial court concluded, based on his repeated disruptions throughout the case and his request to leave court that morning, appellant had waived his right to be present during the trial. The trial court made arrangements for appellant to observe the proceedings from his cell with breaks to allow him to speak with his attorney regarding witness testimony.

{¶ 11} Prior to the start of voir dire, appellant made a request to represent himself at trial. The trial court inquired into the decision and provided appellant with notice of the potential negative consequences of representing himself as well as the expectation that appellant would follow rules of evidence as a lawyer would in the case. When asked if he understood, appellant refused to answer the court's questions. The court noted that "[it has] to make sure that you understand what you're doing. If you're not going to answer my questions, I can't make a finding that you understand what is involved in representing yourself. So you can answer my questions and show me that you understand what

representing yourself means or I can escort you back out of this courtroom and we can continue the trial with your counsel." *Id.*at 25. Appellant asked the trial court, "[h]ow long I got before this mockery takes place?" *Id.* at 33-34. The trial court stated that appellant had two years to prepare for trial, and it would not delay the case any longer. Finally, the trial court asked if appellant wanted to represent himself given all the discussed issues, appellant responded, "I'm done" and exited the courtroom. *Id.* at 35.

{¶ 12} The parties addressed several preliminary matters before proceeding with jury selection.[2] The parties completed opening statements and elicited testimony of a single witness, Mauricio Ramirez. At the conclusion of redirect examination, the trial court allowed counsel to meet with his client to check if he had any questions concerning the witness. The trial court reopened the record stating that, after meeting with his counsel, appellant would like to change his plea. The parties provided a joint recommendation that appellant would change his plea in case No. 19CR-4208 to guilty as to a single count of burglary in violation of R.C. 2911.12, a felony of the second degree. As to case No. 20CR-295, appellant would change his plea to guilty as to a single count of burglary in violation of R.C. 2911.12, a felony of the third degree. The remaining charge would be dismissed nolle prosequi. The parties recommended a six-year term of incarceration for burglary in 19CR-4208 and a three-year term of incarceration for burglary in 20CR-295 to run concurrently with each other. The trial court inquired as to whether appellant knowingly, voluntarily, and intelligently understood the consequences of changing his plea. Relevant to the instant appeal, the trial counsel asked appellant if he was satisfied with his attorney's representation to which appellant replied, "I'm content." (July 28, 2021 Tr. at 6.) Appellant also confirmed counsel answered all his questions in the case. Appellant signed two guilty plea forms that read he was "completely satisfied with legal representation and advice I have received from my counsel." (July 28, 2021 Change of Plea Form at 3.) The trial court adopted the recommendation as proposed by the parties and added three years of post-release control upon release. Appellant was given 711 days of jail-time credit.

{¶ 13} Appellant filed a timely appeal.

---

[2] The trial court noted for the record that appellant was in a holding cell where he could view the proceedings. The parties restated the status of plea negotiations. The trial court also reiterated its prior finding that, based on appellant's behavior and his indications that he did not want to be in the courtroom, he has waived his Sixth Amendment right to be present during the trial.

## II. ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

[1] THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO APPOINT SUBSTITUTE COUNSEL FOR INDIGENT DEFENDANT-APPELLANT THEREBY DENYING APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL.

[2] THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING DEFENDANT-APPELLANT'S REQUEST FOR A CONTINUANCE TO CONDUCT LEGAL RESEARCH AND PREPARE TO REPRESENT HIMSELF AT TRIAL.

[3] THE TRIAL COURT'S ERRORS IN NOT APPOINTING SUBSTITUTE APPOINTED COUNSEL AND/OR GRANTING A CONTINUANCE TO ALLOW APPELLANT TO PREPARE TO REPRESENT HIMSELF PREJUDICED APPELLANT SO AS TO HAVE PRECLUDED HIM FROM MAKING KNOWING, INTELLIGENT, AND VOLUNTARY GUILTY PLEAS.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 15} In appellant's first assignment of error, he argues that the trial court abused its discretion in denying his request for substitute trial counsel, thereby denying his right to effective assistance of counsel.

{¶ 16} In order to discharge a court-appointed attorney, a defendant must demonstrate a " 'breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *State v. Morgan*, 10th Dist. No. 13AP-620, 2014-Ohio-5661, ¶ 44, quoting *State v. Coleman*, 37 Ohio St.3d 286, 292 (1988), paragraph four of the syllabus. Personal conflict, tension, or hostility between attorney and client does not constitute a total breakdown in communication if these issues do not interfere with the preparation and presentation of the client's defense. *Morgan* at ¶ 44 (further citations omitted).

{¶ 17} When an indigent defendant questions the effectiveness of the assigned counsel " 'it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record.' " *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 68, quoting

*State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus.  This " 'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.' " *Johnson* at ¶ 68, quoting *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist.1998).  The inquiry into the defendant's concerns with representation may be brief and minimal.  *State v. Erwin*, 10th Dist. No. 09AP-918, 2010-Ohio-3022, ¶ 8.  " '[T]he right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." ' " *State v. Griffin*, 10th Dist. No. 12AP-798, 2013-Ohio-5389, ¶ 15, quoting *State v. Mizell*, 1st Dist. No. C-070750, 2008-Ohio-4907, ¶ 26, quoting *State v. Crew*, 8th Dist. No. 86943, 2006-Ohio-4102, ¶ 17.

{¶ 18} We review whether the trial court erred in denying appellant's request for a new court-appointed attorney under an abuse of discretion analysis. *Griffin* at ¶ 15.  A trial court abuses its discretion when the determination is arbitrary, unreasonable, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  The Supreme Court of Ohio has clarified this standard noting that all "courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." *Johnson v. Abdullah*, __Ohio St.3d.__, 2021-Ohio-3304, ¶ 39.

{¶ 19} After consideration of the record, we find the trial court did not abuse its discretion by denying appellant substitute counsel.  The record reflects appellant's complaints, while persistent, were often vague, general objections to counsel's representation.  Curiously, the record indicates the trial court allowed appellant the option of new counsel early in the case.  It was, in fact, appellant that declined new counsel electing to have the earliest possible trial date.  On July 2, 2020, the appellant appeared before the trial court for a pretrial hearing.  Appellant stated he was not satisfied with his representation based on the lack of communication.  The trial court inquired into counsel's communication with appellant.  Counsel responded that he had discussed the case with his client on four occasions, including twice in the last month, provided discovery, and explained the delay due to the tolling order from the COVID-19 pandemic.  Counsel also sent a copy of the Supreme Court's order to his client.  Despite no indication from the trial court that appellant's counsel was deficient in his representation, it offered appellant the choice to proceed to trial with his current counsel or a new attorney.  The trial court

explained that if appellant wanted a new attorney there would be a delay in the case to allow new counsel time to prepare for trial. Appellant did not answer and requested a change of venue. The trial court denied the request and set the matter for a subsequent hearing. Appellant repeated these complaints at the July 15, 2020 hearing. The trial court stated that the case would proceed to trial on September 8, 2020 if appellant wanted to keep his current attorney. The trial court reiterated that if appellant wanted a new attorney, it would delay the trial. When the trial court asked if appellant would like to proceed with current counsel or with new counsel, appellant stated, "You running the show. You make the call." (July 15, 2020 Tr. at 9.) When asked if he would like to represent himself at trial, appellant responded; "It's your show." *Id*. at 10.

{¶ 20} Despite appellant's repeated complaints, the conflict in the attorney-client relationship never reached such magnitude as to jeopardize appellant's right to effective assistance of counsel. This was most evident at the September 8, 2020 hearing. On the scheduled trial date, appellant refused to leave the jail. While counsel for appellant stated his recent discussion with his client "blew up," appellant instructed him to demand a continuance and a mental health examination, which counsel relayed to the trial court. Even when the relationship appeared hostile, appellant still trusted his attorney to convey his interests to the trial court.[3]

{¶ 21} On July 27, 2021, appellant refused to enter the courtroom. The trial court held a hearing in the holding cell. Appellant indicated that he did not want his attorney to continue representing him in this case as counsel had purportedly discussed his case with another inmate. The trial court inquired into this claim. Counsel explained that when appellant had made a scene in the jail hallway, another inmate asked him about the cause of the commotion. Counsel remarked that it appeared appellant was not pleased with his representation.

{¶ 22} Considering the above evidence, appellant's alleged requests for new counsel would best be characterized as vague, general criticisms. The trial court actually allowed appellant the option of new counsel early in the proceedings, which appellant never

---

[3] We also note that the issue of substitute counsel was discussed at the November 30, 2020 hearing. When the trial court rejected appellant's request for a change in bond, he attempted to exit the courtroom stating that counsel would not be his attorney for trial. While appellant made it clear that he wanted new counsel, his complaints were vague, general assertions as to his dissatisfaction with his attorney.

pursued instead opting for the earliest possible trial date. The few times appellant provided a specific complaint, the trial court inquired into the issue before denying the request for new counsel. The trial court also identified some of the behavior as a stall tactic, which based on the timeline of events and tenor of the appellant's comments, appears a reasonable conclusion. Even when appellant refused to appear in court, he communicated his demands through counsel. There is also evidence that whatever tensions existed between appellant and his attorney were resolved by the end of the case. During the change of plea hearing, appellant acknowledged that he was "content" with his attorney's representation and that counsel answered all his questions. (July 28, 2021 Tr. at 6.) Moreover, appellant signed two separate entries acknowledging that he was "completely satisfied with legal representation and advice I have received from my counsel." (July 28, 2021 Change of Plea Form.) Accordingly, we find the trial court acted reasonably in denying appellant's request for substitute court-appointed counsel.

{¶ 23} Appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 24} In appellant's second assignment of error, he argues that the trial court abused its discretion in denying his request for a continuance to represent himself at trial.

{¶ 25} The decision to grant or deny a continuance falls within the trial court's sounds discretion. *Miller v. Flowers*, 10th Dist. No. 20AP-226, 2021-Ohio-220, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Accordingly, we will not reverse a trial court's decision regarding a continuance absent a showing that it abused its discretion. *Flowers* at ¶ 12, citing *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199.

{¶ 26} The Sixth Amendment to the United States Constitution protects the right of a criminal defendant to self-representation. "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defense." Similarly, Article I, Section 10 of the Ohio Constitution, provides, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." The right to counsel, however, implicitly embodies the right to dispense with an attorney's representation in a case. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 26, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

{¶ 27} The United States Supreme Court wrote:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California*, 422 U.S. 806, 819-20 (1975).

{¶ 28} Since *Faretta*, the Supreme Court of Ohio has concluded, "[t]he Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson,* 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta.* The Supreme Court has found that when a criminal defendant unambiguously asserts his right to self-representation, the trial court must conduct a *Faretta* inquiry to resolve whether the defendant is knowingly and intelligently waiving his right to counsel. *Obermiller* at ¶ 30, citing *United States v. Cromer*, 389 F.3d 662, 682-83 (6th Cir.2004). A trial court commits reversal error by denying the right of self-representation when it is "properly invoked." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 74 (concluding the trial court abused its discretion refusing to allow the defendant the right to proceed pro se in a capital case if the defendant properly invokes the right to self-representation).

{¶ 29} In order to "properly invoke" the right of self-representation, a defendant must "unequivocally and explicitly invoke" his intention to assert his right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 38. This safeguards against a defendant that merely seeks to " 'tak[e] advantage of and manipulat[e] the mutual exclusivity of the rights to counsel and self-representation.' " *Obermiller* at ¶ 29, quoting *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.2000). As such, courts shall " 'indulge in every reasonable presumption against waiver' " of the right to counsel.

*Obermiller* at ¶ 29, quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977).  Moreover, even if a defendant initially properly invoked his right to proceed pro se, a defendant can later waive that request by acquiescing to representation from counsel.  *Obermiller* at ¶ 31, citing *Cassano* at ¶ 42, citing *McKaskle v. Wiggins,* 465 U.S. 168, 177 (1984).

{¶ 30}  As set forth in the first assignment of error, appellant repeatedly complained about counsel's representation and requested substitute counsel be appointed.  Appellant, however, despite repeated inquiries from the trial court throughout the case, never expressed any interest in representing himself at trial.  On July 15, 2020, counsel for appellant informed the court, "[appellant was] okay with me continuing to represent him or at least -- maybe I should say this: He does not want to represent himself."  (July 15, 2020 Tr. at 4.)  When asked by the trial court whether he would like to represent himself, appellant disregarded the question and replied, "It's your show."  *Id.* at 10.  On November 30, 2020, after appellant stated that counsel would not be his attorney, the trial court asked if appellant wanted to represent himself at trial.  Appellant did not respond to the question but instead made a series of inappropriate comments to the court. On the date of trial, appellant refused to enter the courtroom.  The trial court held a hearing in the holding cell and notified appellant it was prepared to proceed with trial or consider a plea in this case. When appellant refused to proceed with his current counsel, the trial court asked if appellant wanted to represent himself. Appellant responded, "[n]o. I want a chance to talk to another attorney."  (July 27, 2021 Tr. at 4.)  The trial court then held a hearing in the courtroom where it, again, asked if appellant wanted to represent himself, which he declined.  The trial court ultimately found that based on appellant's behavior and his indications that he does not want to be in the courtroom, he had waived his Sixth Amendment right to be present during the trial.  It was only after the trial court found that appellant had waived his right to be present during the jury trial did appellant inquire into proceeding pro se.

{¶ 31} Once appellant broached the idea of representing himself at trial, the court made multiple attempts to engage in a *Faretta* inquiry to determine if appellant knowingly and intelligently intended to assert his right to self-representation. Appellant proceeded to interrupt the trial court, ask for the media to be called into the courtroom, and make multiple inappropriate comments.  The language employed by appellant requesting a

continuance also reveals his intentions were less than sincere. Appellant asked the trial court, "[h]ow long I got before this mockery takes place?" *Id.* at 33-34. When the trial court asked what appellant said, he repeated the jibe stating, "I said, how long do I have to prepare before this mockery takes place?" *Id.* at 34. The trial court concluded that as appellant had two years to prepare for trial it would not delay the case any longer. Appellant then stated, "I'm done." *Id.* at 35. When the trial court again asked, "[s]o you're not representing yourself?", appellant replied, "I'm done" and exited the courtroom. *Id.* at 35.

**{¶ 32}** Based on the foregoing, the trial court did not abuse its discretion in denying appellant's request for a continuance to represent himself at trial. First, appellant never properly invoked his right to self-representation. When the trial court attempted to engage in a *Faretta* inquiry, appellant became disruptive hindering the trial court's analysis into the issue. Appellant's half-hearted claim of self-representation was a blatant attempt to further delay the case. Arguendo, regardless of whether appellant's comments to the trial court constituted an unequivocal and express request to proceed pro se, appellant waived the request by agreeing to representation by counsel. *Obermiller* at ¶ 31, citing *Cassano* at ¶ 42, citing *McKaskle* at 182. As appellant's right to self-representation was not properly invoked, the trial court did not abuse its discretion in denying appellant's motion to continue the case.

**{¶ 33}** Appellant's second assignment of error is overruled.

## C. Appellant's Third Assignment of Error

**{¶ 34}** In appellant's third assignment of error, he argues that his guilty plea was not knowingly, intelligently, and voluntarily made because the trial court denied his request for a new attorney, and the trial court denied his motion to continue the trial.

**{¶ 35}** " ' "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." ' " *State v. Milton*, 10th Dist. No. 17AP-487, 2019-Ohio-3900, ¶ 44, quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Criminal Rule 11 governs the procedures that a trial court must undertake to accept a guilty plea. Pursuant to Crim.R. 11(C)(2):

> (2) In felony cases the court may refuse to accept a plea of guilty
> or a plea of no contest, and shall not accept a plea of guilty or

no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Acceptance of a defendant's plea falls within the trial court's sound discretion that will not be disturbed absent an abuse of discretion. *State v. Raymond*, 10th Dist. No. 05AP-1043, 2006-Ohio-3259, ¶ 10, citing *State v. Moss*, 10th Dist. No. 77AP-267, 1977 Ohio App. LEXIS 7440 (Aug. 9, 1977); Crim.R. 11(C)(2).

{¶ 36} Upon review, appellant does not appear to dispute that the trial court complied with Crim.R. 11 but argues that appellant's plea was not voluntary based on the trial court's failure to appoint new counsel, and its denial of appellant's request to continue the trial. As set forth in the first assignment of error, we do not find the trial court abused its discretion denying appellant's request for substitute counsel as it was reasonable to find the conflict in the attorney-client relationship never reached such magnitude as to jeopardize appellant's right to effective assistance of counsel. Appellant's claims throughout the case generally amounted to vague assertions of dissatisfaction with his trial counsel. When appellant did present specific complaints, the trial court dutifully inquired into the allegations. Appellant's argument on appeal also conflicts with his statements and acknowledgements at the change of plea hearing. During the hearing, the trial counsel asked appellant if he was satisfied with his attorney's representation. Appellant replied,

"I'm content." (July 28, 2021 Tr. at 6.) Appellant also indicated on the change of plea forms that he was "completely satisfied with legal representation and advice I have received from my counsel." (July 28, 2021 Change of Plea Form at 3.) Similarly, as set forth in our analysis of appellant's second assignment of error, the trial court did not abuse its discretion in denying his motion for a continuance as the right to self-representation was not properly invoked or, alternatively, was waived as appellant acquiesced to counsel's representation at trial.

{¶ 37} There is also insufficient evidence in the record to substantiate appellant's claims that he felt pressured to accept a plea agreement. The record indicates that the trial court, prior to accepting appellant's plea, complied with the requirements of Crim.R. 11 and fully advised appellant of his rights. Appellant affirmatively stated no one had threatened him or promised him anything in an effort to get him to change his plea. Appellant also stated that he understood the possible penalties associated with his plea and the rights he was waiving by entering a guilty plea. When asked if he understood that by pleading guilty to these offenses, he was admitting that he committed the offenses, appellant responded, "Yes." (July 28, 2021 Tr. of Plea & Sentencing Proceeding at 7.) Accordingly, the trial court did not abuse its discretion accepting that appellant's plea was made in an intelligent, knowing, and voluntary manner.

{¶ 38} Appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 39} Having overruled appellant's three assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

KLATT and SADLER, JJ., concur.

————————————